STATE *ex rel.* LITSON v. McGOWAN.

In Banc, March 16, 1897.

138 187
,162 539
138 187.
174 ⁶550

1. **Township Organization:** ELECTION: MAJORITY OF VOTERS. The Missouri Constitution requires a majority of the legal voters, "voting at any general election," to adopt township organization in a county. A majority of those voting on that proposition is not sufficient if less than a majority of all the votes cast at the election on any issue then submitted.

2. **Township Organization:** HOW ABANDONED. A county may abolish township organization by the vote of a majority of those voting upon that question at a general election.

3. **Requisite Vote:** COUNTY SEATS: CITY CHARTERS: DIVISION OF COUNTIES. The requisite votes to adopt various measures in Missouri are stated, viz., for the removal of county seats, division of counties, and for amendment of city charters.

4. **Limitations on Legislature.** The words of a statute must be so limited as to conform to the commands of the Constitution.

5. **Constitution:** CONSTRUCTION. The organic law is subject to the same rules of construction as other laws, having due regard to the broader scope of the former.

6. **Constitution:** STATUTE: INTENT. The intent of a law is the prime object to be kept in view in its construction.

7. **Right of Resident Taxpayer.** A resident taxpayer and voter of a county is assumed to have requisite status to obtain a mandamus against the county clerk to compel the latter to proceed in carrying out a township organization.

*Mandamus.*

PEREMPTORY WRIT DENIED.

*W. M. Bowker* for relator.

(1)   If a majority of the voters of the county voting for and against township organization vote for it, then township organization is adopted.   R. S. 1889, sec. 8427; *Rousey v. Wood*, 63 Mo. App. 460.   (2) Township organization can only be submitted to the voters at a general election.   R. S. 1889, sec. 8424; section 8, article 9, Constitution.   (3)   Township organization can be determined only by a majority vote of the voters—by voting at a general election on the question of township organization.   Section 8, article 9, Constitution.   (4)   The use of the term "majority" of voters of a county or school district, or a body of voters, or a city must assent to a proposition in order to adopt it, means a majority of those acting on the proposition. *State v. Mayor*, 37 Mo. 270; *State v. Binder*, 38 Mo. 451; *Richardson v. McReynolds*, 114 Mo. 641; *Russie v. Brazzell*, 128 Mo. 93; *State ex rel. v. Ellis*, 130 Mo. 90.   (5)   The term majority of legal voters of county and the term majority of legal voters of county voting on the proposition mean the same thing when applied to some propositions to be determined by voting. *State v. Ellis*, 130 Mo. 90.   (6)   The township organization law has been before the court and held good on other questions in the following cases: *State v. McGovney*, 92 Mo. 428; *State ex rel. v. Railroad*, 123 Mo. 72.

*S. A. Wright* for respondent.

(1)   In determining the sufficiency of plaintiff's petition, the only question we desire to raise is the con-

stitutionality of section 8427 of the Revised Statutes of
1889.  Section 8, article 9, of the Constitution, uses
this language:   "The General Assembly may provide
by general law for township organization, under which
any county may organize whenever a majority of the
legal voters of such county voting at any general elec-
tion shall so determine."   Section 8427 of the Revised
Statutes of 1889, says:  "If a majority of the legal
voters of the county, voting at such general election
for and against township organization, vote for such
organization, then it shall be adopted in such county."
The Constitution plainly requires a majority of all the
votes cast at such general election to be in favor of
township organization in order that it may be adopted.
If the statute requires less, it is in conflict with the Con-
stitution and not binding.   It might be construed, per-
haps, to require the same vote as the Constitution.   I
presume it will not be claimed by anyone, that if the
number of votes cast for the proposition was not as
many as the Constitution requires, then it was defeated.
The plaintiff's petition states seven thousand, four
hundred and twenty-eight votes were cast in the county
for presidential electors; for township organization
three thousand, six hundred and eighty-four—thirty
less than a majority.   (2)   The Constitution of 1865
requires the assent of two thirds majority of all the le-
gal voters in a township to subscribe to the stock
of a corporation, and this court has repeatedly held,
that it did not mean two thirds of those voting, but
two thirds of all the legal voters in such township, and
that any statute requiring a less number was inopera-
tive and void.   *State ex rel. v. Sutterfield*, 54 Mo. 391;
*State ex rel. v. Bransfield*, 67 Mo. 331;  *State ex rel. v.
Harris*, 96 Mo. 29;  *State v. Winkelmeir*, 35 Mo. 103;
*State ex rel. Wear v. Francis*, 95 Mo. 44.  (3) The Consti-
tution says:  "Whenever a majority of the legal voters

of such county voting at any general election shall so determine." Determine what? Decide in favor of township organization. The language is not obscure, but if it were necessary to supply, a fair and reasonable rendering would read: "Whenever a majority of the legal voters of such county, voting at any general election, shall so determine by voting in favor of such adoption." (4) This principle was enunciated in *State v. Winkelmeir*, 35 Mo. 103. The General Assembly had enacted that the corporate authorities of the different cities of the county of St. Louis shall have the power whenever "a majority of the legal voters of the respective cities in the county authorize them so to do, to grant certain privileges." At a city election, for the election of city officers, there was more than thirteen thousand votes cast, but only five thousand and thirty-five voted in favor of the grant of the privileges, and two thousand and one against. The court held that five thousand was not a majority of thirteen thousand, and therefore it was unnecessary to pass upon the other question arising in the case. *State ex rel. Wear v. Francis*, 95 Mo. 44. (5) It might be added that the convention itself which created the Constitution of 1875, in providing a means of abandoning township organization (section 9, article 9) used language that may be fairly referred to in interpreting and construing the meaning of section 8. In section 9, it says: "If a majority of all the votes cast upon that question shall be against township organization it shall cease in said county." (6) Unlike the cases of *State v. Mayor*, 37 Mo. 270, and *State v. Binder*, 38 Mo. 451, the case at bar is relieved from all doubt and uncertainty in ascertaining the number of votes necessary to carry the proposition. The Constitution fixes it in such a manner that it is always ascertainable. The plaintiff's pe-

tition recites the vote and shows that it is thirty less than the number required by the Constitution.

BARCLAY, C. J.—This is a proceeding to obtain a writ of mandamus to the defendant, as clerk of the county court in Vernon county. Relator is Mr. Litson, a resident taxpayer and voter of that county, who insists that the proposal for township organization (submitted at the last general election to the voters of the county) was adopted. Defendant has refused to issue notices for the first township elections, appointed by statute for the last Tuesday in March following the adoption of township organization. The object of this action is to compel him to proceed officially in that matter, as prescribed by section 8428 (R. S. 1889).

Defendant waived the issue of an alternative writ and demurred to the petition. The facts are all admitted.

At the general election of 1896 in Vernon county the following votes were recorded:

Votes cast for presidential electors.... ... ........ .....7,428.
For township organization. ..... . .....................3,684.
Against township organization..........................1,356.

While the township proposition received a majority of the votes cast thereon, it was not approved by a majority of all the legal voters voting at that election. The canvassing board of the county, however, declared the proposition adopted. In so doing they, no doubt, intended to follow section 8427 as their guide. That section declares the vote required to adopt the proposition to be "a majority of the legal voters of the county voting at said election *for and against township organization.*" The defendant contends that the words we have marked by italics are in conflict with the organic law of the State, if construed (as they have been by the canvassing board) to mean that a number short of a

majority of all the votes cast on any issue at the election will suffice to adopt the township proposition.   Relator on the other hand, claims that section 8427 is entirely constitutional, and that the proposition was adopted because approved by a majority of those who voted on that particular question.

The parts of the Constitution bearing pointedly on this subject are found in the ninth article as follows:

"Sec. 8.   *Township organization—county justices.*— The General Assembly may provide, by general law, for township organization, under which any county may organize whenever a majority of the legal voters of such county, voting at any general election, shall so determine; and whenever any county shall adopt township organization," etc.

"Sec. 9.   *Township organization, discontinued, how.* —In any county which shall have adopted "township organization," the question of continuing the same may be submitted to a vote of the electors of such county at a general election, in the manner that shall be provided by law; and if a majority of all the votes cast upon that question shall be against township organization, it shall cease in said county; and all laws in force," etc.

The sole question before the court is the true meaning of the clause, "whenever a majority of the legal voters of such county, voting at any general election, shall so determine."

The words "so determine" we consider to mean "determine to organize under the general law for township organization."   But the majority required to so determine must be a majority of the legal voters of such county, voting at any general election, just as the Constitution declares.

The organic law is subject to the same general rules of construction as other laws, due regard being had to

the broader objects and scope of the former, as a charter of popular government.    The intent of such an instrument is the prime object to be attained in construing it.

In the case at bar we must ascertain whether the Constitution is to be taken to mean exactly what it says on the point of present controversy, or to be taken with the shade of meaning proposed in the able argument for relator.    It is argued for the latter that the words "voting at any general election" should be held to mean "voting on the proposition at any general election."    But it is apparent at a glance that the document itself carefully avoids that form of expression.    Those who examine all parts of the Constitution referring to elections will observe that that subject is usually handled with care in treating of the majorities required to adopt various measures.    That care was the outgrowth of experience acquired from the serious controversies on that very point that had been already waged in the courts of Missouri, and which have since become historical.    Those controversies were fresh in the minds of the members of the constitutional convention.    To that fact the noteworthy discrimination in the use of language on the subject in hand is probably ascribable.    Many parts of the Constitution indicate that the draftsmen kept well in mind the difference between a majority vote upon a certain proposition at an election, and a majority vote of all the legal voters at that election.    Thus, in authorizing a vote on the subject of the removal of a county seat, it is provided that "no county seat shall be removed unless two thirds of the qualified voters of the county, voting on the proposition at a general election, vote therefor."    Art. 9, sec. 2.    In the sections touching division of counties, the vote required is a majority "voting on the question."    Art. 9, secs. 3 and 4.    And,

by the very significant terms of section 9 of article 9, township organization may be dispensed with by "a majority of all the votes cast upon that question," at a general election.

On the other hand, some sections of the Constitution require majorities of the qualified voters, voting at an election, to adopt certain measures.   See sections 16 and 22 of article 9.

From all these provisions of the fundamental law it may fairly be inferred that the language found in section 8 (touching the requisite majority for the adoption of township organization) was used advisedly, and with no intent to imply any different meaning from that which the words naturally convey.   Prior decisions of the Supreme Court have, moreover, ascribed to language in substance the same as that now before us, the meaning we find in the section under review. *State v. Winkelmeier* (1864) 35 Mo. 103; *State ex rel. Allen v. Mayor* (1881) 73 Mo. 435.

The marked use of different phraseology in sections 8 and 9 with reference to the majority required to go into, and to get out of, township organization, indicates that those who drafted the sections were well aware of the effect of the terms they were applying to the subject.   They intended, doubtless, to make it more difficult to adopt, than to abolish, township organization.   But the intent to require the approval of a majority of all the legal voters, voting at a general election, as a prerequisite to so radical a change in the local government as township organization would effect, is manifest and plain.

The general power of the legislature to frame a statute for township organization is clearly limited by the terms of the organic law above quoted.   Hence section 8427 can not be accepted as authorizing the adoption of such a proposal by a vote of less than the

majority of the legal voters of the county, who happen to vote at the election in question.

The township act of 1872 anticipated the Constitution of 1875 in providing for such a vote as the latter requires. (Laws 1871–72, p. 184, sec. 4.) But the statute of 1879 introduced the words now in section 8427 (R. S. 1889), which have given rise to the controversy submitted to the court in this case. (Laws 1879, p. 218, sec. 4.) They can not lawfully be given an effect in conflict with the Constitution, and must be limited so as to conform to the supreme law of the State.

The language of section 8 in regard to the requisite vote for township organization is identical with that appearing in the present Constitution of Illinois. Const. Ill. 1870, art. 10, sec. 5. In that State the Supreme Court at an early day had to consider the same question raised in this action, and it was then decided in harmony with the conclusion we have reached. *People v. Brown* (1850) 11 Ill. 478. At the time of that decision the Constitution of Illinois contained the following language on this subject: "Whenever a majority of the voters of such county, at any general election, shall so determine" (Ill. Const. 1848, art. 7, sec. 6).

And in the circuit court of Knox county, Missouri, the late Judge TURNER, then the very able and experienced judge of that circuit, in the case of *Beal v. Lockett* (1890) took the same view of the Constitution of Missouri that we announce.

We hold that the proposition for township organization was not adopted at the recent election in Vernon county. It follows that the application for mandamus should be denied. It is so ordered. GANTT, MACFARLANE, SHERWOOD, BURGESS, ROBINSON and BRACE, JJ., concur.