[No. 9191. Department One. May 5, 1911.]

Mrs. O. I. Converse, *Contestant and Respondent*, v.
W. A. Mix *et al.*, *Contestees and Appellants.*[1]

Wills—Execution—Undue Influence—Evidence — Sufficiency. Undue influence upon the part of a son, to whom the testatrix left the major portion of her estate, is not shown, and findings setting aside the will are unwarranted, where it appears that the contestant. a daughter, had been unable to get along with her mother for many years, infrequent visits usually ended in violent discord, while relations with her sons, who took care of her, especially the favored son, were harmonious and usually affectionate; such conduct on his part not being in law undue influence.

Same—Mental Capacity — Evidence — Sufficiency. Mental incapacity of an old lady to make her will is not shown by the fact that she was eccentric in the matter of dress, an ardent woman suffragist, and believed she was being persecuted for her eccentricities, where it appears that she had the business ability and judgment to amass and manage a considerable fortune, and retained her mental faculties until the last.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered March 7, 1910, annulling a will, upon findings in favor of the contestant, after a hearing on the merits before the court without a jury. Reversed.

*T. P. & C. C. Gose*, for appellants.

*Sharpstein & Sharpstein* and *Dunphy, Evans & Garrecht*, for respondent.

Per Curiam.—On January 24, 1909, Anna McC. Mix died in the county of Walla Walla, state of Washington, leaving

[1]Reported in 115 Pac. 305.

estate therein, consisting of real and personal property, and leaving as her sole heirs-at-law two sons and a daughter, each of whom was then over the age of majority. She left a will naming her sons and her daughter as legatees and devisees thereof, devising her real property to them in unequal shares, giving one of the sons the more valuable portion, and naming both of her sons as executors thereof. After the will had been admitted to probate, the daughter began proceedings to revoke the probate of the will, and to have the same adjudged to be not the last will and testament of the deceased, setting forth in her petition as grounds therefor; first, that, at the time of the purported execution of the will, the testatrix was incapable, by reason of mental and physical infirmities, of executing a will; and second, that, at the time of the purported execution of the will, the testatrix was acting under the undue influence of her sons, and particularly the younger son to whom she purported to devise the major portion of her real property.

A hearing was had on the allegations of the petition, which resulted in a finding by the trial court that the "deceased was induced to make, execute, and sign said instrument as and for her last will and testament, and to declare the same to be such last will and testament by the undue influence of" her sons "and especially by that of her son Stonewall Wallace Mix," to whom she had devised the greater portion of her real property; and in an order revoking the probate of the will, and adjudging the same to be not the last will and testament of the deceased. This appeal was taken therefrom.

The ground on which the trial court rested its judgment finds little, if any, support in the evidence. While it is true that the testatrix was aged, and was, during her later years, afflicted with an incurable disease—diabetes—and needed the constant care of some one, and that her sons saw that she was provided with such care, yet there is nothing to show that there was anything other than natural affection that induced her to make her will in their behalf. On the other

hand, there are abundant reasons shown why she might not have the same regard for her daughter. The daughter married an army officer in 1866. From that time up until the time of her mother's death, she visited with her mother but five different times; and these visits were of but short duration, usually ending in some violent discord which left them both in a very unhappy frame of mind. The last of these visits was made some four years before the mother's death. At the solicitation of her brothers, the sister came to her mother's home at Walla Walla for the purpose of caring for her during her declining years. She had been in the house but a few days until she began agitating taking proceedings to have her mother placed in a sanitarium, and a guardian appointed over her property. When information of this reached the mother, the usual ruction took place; the daughter left the house for her own home, and let the duty of looking to the mother's comfort fall again upon the sons. One of these sons had been her favorite from his babyhood. His conduct towards her during his whole life seems to have been uniformly courteous and kind. While she had troubles at different times with her other son, and with her daughter whenever they met, her relations with this son were always harmonious, and of a character unusually affectionate, even for mother and son. It is not surprising nor unnatural, therefore, that she should make him the object of her greatest bounty. And while her affection for this son may have influenced her to remember him in her will to the partial exclusion of her other son and her daughter, it is not that character of influence that is classed by the law as undue influence, or that character of influence that authorizes the courts to vacate and hold for naught last wills and testaments. In the language of the supreme court of Kansas in *Ginter v. Ginter*, 79 Kan. 721, 101 Pac. 634, 22 L. R. A. (N. S.) 1024:

"To vitiate a will there must be more than influence. It must be undue influence. To be classed as undue, influence must place the testator in the attitude of saying, 'It is not my

will, but I must do it.'   He must act under such coercion, com-
pulsion, or constraint that his own free agency is destroyed.
The will, or the provision assailed, does not truly proceed
from him.   He becomes the tutored instrument of a dominat-
ing mind which dictates to him what he shall do, compels him
to adopt its will instead of exercising his own, and by over-
coming his power of resistance impels him to do what he
would not have done had he been free from its control.   A
testator's favor expressed in a will may be won by devoted
attachment, self-sacrificing kindness, and the beneficient min-
istrations of friendship and love.   These influences are not
undue.   We expect partiality to attend them.   They bring
preferment as their natural reward, and they do not become
unrighteous, although they establish a general ascendency
over the testator leading him to find comfort and pleasure
in gratifying the wishes and desires of the person exercising
them.   Other less worthy influences may make equally strong
appeals and may result in the same general dominion and still
be sufferable in contemplation of the law.   Influences to in-
duce testamentary disposition may be specific and direct with-
out becoming undue.   It is not improper to advise, to per-
suade, to solicit, to importune, to entreat, and to implore.
Hopes and fears and even prejudices may be moved.   Appeals
may be made to vanity and to pride; to the sense of justice
and to the obligations of duty; to ties of friendship, of affec-
tion, and of kindred; to the sentiment of gratitude; to pity for
distress and destitution.   It is not enough that the testator's
convictions be brought into harmony with that of another by
such means.   His views may be radically changed, but so long
as he is not overborne and rendered incapable of acting finally
upon his own motives, so long as he remains a free agent, his
choice of a course is his own choice, and the will is his will
and not that of another."

The contestant's learned counsel, however, in their argu-
ment before this court, attempt to support the judgment of
the court below on the ground of mental incapacity in the
testatrix, rather than upon the ground on which it was rested
by the trial judge.   But we think the evidence equally fails
to support this theory.   It is true, it is made clear that the
testatrix was in many ways eccentric, particularly in the

11—63 WASH.

matter of dress. It was shown, also, that at one time she was an ardent woman suffragist, and persuaded herself that she was being persecuted by the people of the city in which she lived because thereof, and because of her dress, her "music, and all that pertained to the refinement of" her home. Her manner of dress, the evidence shows, was somewhat peculiar, and no doubt did cause her neighbors to avoid her socially, and did keep them from inviting her into their homes, and these facts no doubt led her to think she was being persecuted by them. But these complaints were made in the earlier part of her life, and can hardly be said to have much bearing on her sanity at the time the will was executed. Her eccentricities followed her throughout her life, but nevertheless seem not to have interfered with her business ability and judgment. Left a widow in the middle period of her life, with an inconsiderable property and a considerable debt, she succeeded, in the space of perhaps a quarter of a century, in not only paying off the debt, but in amassing a considerable fortune in income-bearing real estate; and this, notwithstanding her eccentricities. Since her eccentricities did not interfere with her accumulation of the property, we do not feel that they should incapacitate her to will it away. Nor did her mental faculties fail until the last. For a considerable period after the execution of the will in question here, and indeed, up until a short period prior to her death, she kept her business matters within her own hands; supervising the action of her agent in renting her properties and collecting the rents therefrom, and keeping charge of her household expenses, not even permitting her sons to supervise the latter.

But without pursuing the question further, the judgment and order appealed from will be reversed, and the cause remanded to reinstate the will and proceed with the administration of the estate, in accordance therewith.