[No. 9848. Department Two. May 7, 1912.]

*In the Matter of the Estate of* ABRAHAM B. PATTERSON. NATHAN A. PATTERSON *et al., Appellants,* v. GEORGE W. McWHIRK *et al., Respondents.*[1]

WILLS—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY. A will will not be set aside for undue influence, where the testator had testamentary capacity, and at the time of making the will was free and unrestrained in exercising his volition, and the evidence only raises a suspicion that the principal beneficiary had some opportunity to exercise undue influence, which was denied, especially where other favored beneficiaries had no such opportunity.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered May 25, 1911, dismissing a will contest, after a trial on the merits to the court. Affirmed.

*Sharpstein & Sharpstein,* for appellants.

*H. S. Blandford,* for respondents.

CROW, J.—On August 13, 1910, the last will and testament of Abraham B. Patterson, deceased, was admitted to probate in the superior court of Walla Walla county. The decedent left as his heirs at law, three sons, William Tolbert Patterson, Nathan A. Patterson, and Abram V. Patterson, four daughters, Maxie J. Barkhuff, Josephine Buroker, Nettie M. Munns, and Arrah J. McWhirk, and three grandchildren, Bird Taylor, Maxie Taylor Morse, and Nellie Taylor, children of his deceased daughter Pauline Taylor. By his will the testator devised $500 to the three grandchildren

[1]Reported in 123 Pac. 515.

jointly, $5 each to his children William Tolbert Patterson, Nathan A. Patterson, Maxie J. Barkhuff, Josephine Buroker, and Nettie M. Munns, $3,000 to his son Abram V. Patterson, and the remainder of his estate to his daughter Arrah J. McWhirk. The total value of the estate was about $11,000. On April 25, 1911, Nathan A. Patterson, Josephine Buroker, Nettie M. Munns, Maxie J. Barkhuff, and Maxie T. Morse, as heirs at law of the decedent, instituted this proceeding to contest the validity of the will. In their petition they alleged that, at the time of its execution, the decedent, by reason of his mental condition, was incompetent to make any will whatever; that the will was procured to be executed by Arrah J. McWhirk and George McWhirk, her husband, by fraud, duress, and undue influence practiced by them upon the deceased, and that the will was not the free and voluntary act of the decedent, but was the result of the fraud, duress and undue influence so practiced upon him. After hearing the evidence, the trial judge sustained the will and dismissed the petition. The contestants have appealed.

Upon the evidence, the testamentary capacity of the decedent at the date of the will was clearly established, and we do not understand that it is seriously disputed on this appeal. The only issue before us is whether the will was procured by fraud, duress or undue influence, or whether it was the voluntary act of the testator. The evidence without dispute shows that the deceased had lived in or near Walla Walla for many years; that his wife died on November 11, 1909; that he died on July 31, 1910, at the age of ninety years; that he was generally regarded as strong-minded, positive and secretive; that he seldom discussed his business affairs; that he personally managed his own business and property interests until about the date of his death; that his relations with his children and grandchildren had always been affectionate and cordial; that he frequently said he would not make a will as it would only cause trouble; that for many years prior to his death he was afflicted with rheuma-

tism, although he was otherwise a strong and vigorous man; that, on account of this rheumatic affliction, he had made several trips to health resorts in Oregon and in Arkansas; that on each of these trips he was accompanied by one of his sons-in-law, but that he carried his own funds and paid his own bills; that on May 16, 1910, he executed the will, at which time his son-in-law George McWhirk took him in a cab to the law office of J. G. Thomas, an attorney in Walla Walla, and left him there; that the decedent told Mr. Thomas he wished to make his will, giving all data and information himself, no one else being present; that Mr. Thomas drew the will, read it to the decedent, who also read it himself; that Mr. Thomas then called in one L. W. Spencer to act as a witness; that Thomas and Spencer talked with the decedent about twenty minutes, and were satisfied as to his mental and testamentary capacity; that the will was then executed, being witnessed by Thomas and Spencer; that later Mr. McWhirk called for decedent and took him home in a cab; that decedent placed the will in a private box which he locked and directed Mr. McWhirk to take to decedent's bank, where it remained; that a day or two thereafter, the testator, accompanied by Mr. McWhirk, left for Hot Springs, Arkansas, where they remained for some time, and that shortly after his return decedent became seriously ill and so continued until his death.

There is no evidence that Mrs. McWhirk and her husband, or either of them, ever asked the testator to make his will or that they suggested to him any particular disposition of his estate, unless such acts are to be inferred from circumstances upon which appellants predicate their claim of undue influence. Appellants produced evidence showing, that for a short time after the death of the testator's wife, he employed a housekeeper and remained at the old home about four miles from Walla Walla; that he discharged the housekeeper, and went to live with the McWhirks in Walla Walla, where he resided at the date of the will, and remained until

his death except when absent at the health resort; that some of his children visited him at the McWhirk home, but were not cordially received by Mrs. McWhirk and did not see their father alone; that Mrs. McWhirk was always present; that they thought or at least felt they were not welcome; that the testator was somewhat more childish after the death of his wife; that he was afflicted with senile decay; that none of the contestants knew of the execution of the will until after the testator's death; that neither he nor the McWhirks mentioned it; that the disposition of his property was unnatural and inequitable, and that the same was contrary to his previous statements that he would not make a will. Mr. and Mrs. McWhirk testified that they had never spoken to decedent in regard to making a will; that they had made no suggestion to him as to the disposition of his estate; that of his own volition he requested Mr. McWhirk to take him to the law office of Mr. Thomas as he had a matter of business with him; that Mr. McWhirk did so, leaving him alone with Thomas; that later he called for him; that the testator told Mr. McWhirk he had made his will, but did not state its terms; that a few days later, after they had left for Arkansas, he told Mr. McWhirk what his will contained; that at some time thereafter, Mr. McWhirk either wrote or orally communicated this information to his wife; that at no time did Mrs. McWhirk prevent any of the children or grandchildren from seeing the decedent; that two of the children were alone with him during his last illness while Mrs. McWhirk was engaged about her domestic duties, and that the decedent had at no time been under any undue influence or restraint. No showing was made as to the financial condition of any of the contestants or the respondents which might throw any light on their relative necessities. No contention is made that the son who receives a legacy of $3,000 was at any time in a position to influence the decedent, yet his legacy largely exceeds the distributive share of the estate that would have descended to him had his father died intestate.

There is no tangible suggestion in the record that his legacy
was procured by fraud, duress or undue influence.

In announcing his decision, the trial judge stated his con-
viction that the will was the result of undue influence, but
in view of the holding of this court in *Converse v. Mix*, 63
Wash. 318, 115 Pac. 305, concluded the evidence was not
sufficient in law, and dismissed the petition.    We conclude
the judgment of dismissal must be affirmed, being compelled
to hold that no undue influence has been shown.    Appellants
insist that the language quoted by this court in *Converse v.
Mix, supra*, from *Ginter v. Ginter*, 79 Kan. 721, 101 Pac.
634, 22 L. R. A. (N. S.) 1024, is subject to criticism in
that it does not announce the prevailing doctrine in this
country, but is contrary to elementary principles.    They
contend that language used in *Ginter v. Ginter* is extreme,
and call attention to the following excerpt, taken from the
quotation which this court made:

"Influences to induce testamentary disposition may be spe-
cific and direct without becoming undue.    It is not improper
to advise, to persuade, to solicit, to importune, to entreat
and to implore.    Hopes and fears and even prejudices may
be moved.    Appeals may be made to vanity and to pride, to
the sense of justice and to the obligations of duty, to ties of
friendship, of affection and of kindred, to the sentiment of
gratitude, to pity for distress and destitution."

The excerpt thus quoted should be read in the light of the
context of the opinion.    The doctrine announced in *Ginter
v. Ginter* is in harmony with the great weight of well recog-
nized authority, and is sustained by numerous citations to,
and quotations from, English and American cases, which ap-
pear in the opinion.    In 1 Williams on Executors (10th ed.),
the author, at page 31, says:

"With respect to a will obtained by influence, it is not
unlawful for a man, by honest intercession and persuasion,
to procure a will in favor of himself or another person;
neither is it to induce the testator, by fair and flattering
speeches: for though persuasion may be employed to influ-

ence the dispositions in a will, this does not amount to influence in the legal sense; and whether or not a capricious partiality has been shown, the court will not inquire."

In support of the text, the author cites *Constable v. Tufnell*, 4 Haggard's Eccl. Rep. 465, in which, at page 485, Sir J. Nicholl, said:

"Whether the will originated with the deceased, or was suggested to him, yet if he (possessed of testamentary capacity to understand and comprehend) adopted and approved of it, and was resolved and decided so to dispose of his property, the will must be pronounced for: for it is not necessary, as I have before observed, that the court should have before it the very origin of the whole transaction; nor that it should be satisfied that the will originated with the deceased himself;—it may have been suggested by the persons around him: but if importunity is to vitiate the instrument, the importunity must be proved; and proved to be of such a nature and degree that the deceased was unable to resist it,—that his free-will and free-agency were destroyed, and that he acquiesced only for peace: but the mere circumstances of his being, at the time of the preparation and execution of the will, surrounded by interested persons,—provided, I again repeat, that the deceased himself were competent, and that he gave his sanction to the instrument proposed to him, will not make such instrument null and void."

Where a testator by designing means and improper influences has been deprived of his usual volition and induced to execute an instrument not his will, although such in form, but in reality the will of another, it is a fundamental rule in the law of wills to annul such instrument for undue influence, even though it be conceded that the testator had testamentary capacity, the theory being that he did not freely exercise such testamentary capacity. The evidence before us unquestionably shows that at the time of making his will the testator was alone with his counsel, against whom no imputation has been made; that he furnished all data to his counsel for drawing the will; that neither McWhirk nor his wife was present, and that the testator acted of his own free will

and volition.  The fact that McWhirk at the testator's request drove him to and from the attorney's office did not interfere with the testator's volition which was exercised in McWhirk's absence.

In *Eastis v. Montgomery*, 93 Ala. 293, 300, 9 South. 311, the court said:

"The undue influence which will avoid a will, must amount to coercion or fraud—an influence tantamount to force or fear, and which destroys the free agency of the party, and constrains him to do what is against his will.  Mere persuasion or argument addressed to the judgment or affections, in which there is no fraud or deceit, does not constitute undue influence."

Under the rule thus announced, undue influence in procuring the execution of a will is not established by showing persuasion or argument which prevailed upon the testator to make some particular disposition of his estate.  To vitiate the will an influence must be shown which, at the time of the testamentary act, controlled the volition of the testator, deprived him of free will agency, and prevented an exercise of his judgment and choice.  He may have been subjected to counsel, suggestion, persuasion or even importunity, yet if it be shown, as in this case, that he had testamentary capacity, and at the time of making the will was free and unrestrained in exercising his volition it cannot be held that undue influence has been shown.  Page, Wills, § 127; *McFadin v. Catron*, 138 Mo. 197, 38 S. W. 932, 39 S. W. 771; *Jackson v. Hardin*, 83 Mo. 175; *Mitchell v. Mitchell*, 43 Minn. 73, 44 N. W. 885; *In re McDevitt*, 95 Cal. 17, 30 Pac. 101; *Estate of Higgins*, 156 Cal. 257, 104 Pac. 6; *In re Rick's Estate*, 160 Cal. 450, 467, 117 Pac. 532, 539; *In re Kilborn's Will* (Cal.), 120 Pac. 762; *In re Morcel's Estate* (Cal.), 121 Pac. 33; *Turner v. Anderson*, 236 Mo. 523, 139 S. W. 180; *Berst v. Moxom*, 157 Mo. App. 342, 138 S. W. 74.

In *Leubbert v. Brockmeyer*, 158 Mo. App. 196, 138 S. W.

92, the testator, who was ninety years of age, made a will in which his principal beneficiary was one to whom he was not related, but with whom he had lived for a short time prior to his death. The showing of undue influence there made was much stronger than any showing in this case, but the court said:

"Influence which is gained alone through kindness, and springs from the fondness of affection, is not of that character which the law condemns as undue and because of which a last will and testament may be set aside. *Campbell v. Carlisle*, 162 Mo. 634, 63 S. W. 701; *In the Matter of Gleespin's Will*, 26 N. J. Eq. 523; *Mackall v. Mackall*, 135 U. S. 167, 10 Sup. Ct. 705, 34 L. Ed. 84. The character of influence which the law denounces as undue, and on account of which the will of a testator is invalidated, is that which one exercises through persuasion, coercion, force, or fraud, to the end of overcoming the free agency or will power of the testator, so as to substitute in part at least his will or wish in the matter for that of the testator. It is because of such influence alone, as contradistinguished from that which is acquired through mere kindness, affection, or attachment, that the law denounces an instrument not the last will and testament of the testator. *Winn v. Grier*, 217 Mo. 420, 117 S. W. 48; *Teckenbrock v. McLaughlin*, 209 Mo. 533, 550, 551, 108 S. W. 46."

In *Jackson v. Hardin, supra,* the supreme court of Missouri said:

"The influence denounced by law must be such as amounts to overpersuasion, coercion or force, destroying the free agency and will-power of the testator. It must not be merely the influence of affection or attachment, nor the desire of gratifying the wishes of one beloved, respected and trusted by the testator."

We cannot discuss the evidence in detail. Its substance has been already stated. Construed most favorably to appellants, it does not amount to proof of undue influence. At best it only suggests a suspicion, that as respondents had some opportunity to exercise undue influence, as the testator made a will in which Mrs. McWhirk is

the principal beneficiary, and as the decedent was on friendly terms with his other children, undue influence might have been exercised. Mere suspicions are not sufficient to sustain the burden of proof which the law imposes upon the contestants. In the case of *In re McDevitt, supra*, the court said:

"Evidence must be produced that pressure was brought to bear directly upon the testamentary act; but this evidence itself need not be direct. Circumstantial evidence is sufficient. It must, however, do more than raise a suspicion. It must amount to proof, and such evidence has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator."

The circumstances here shown, which at most do no more than raise a suspicion, are consistent with the theory that the will was the spontaneous and voluntary act of the testator. In the very recent case of *In re Kilborn's Estate, supra*, the court said:

"Mere proof of opportunity to influence a testator's mind, even when coupled with an interest or motive to do so, will not sustain a finding of undue influence, in the absence of testimony showing that there was pressure operating directly on the testamentary act. . . . The existence of undue influence may, no doubt, be shown by circumstantial evidence, but such evidence must 'do more than raise a suspicion. It must amount to proof, and such evidence has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator'."

In *Saxton v. Krumm*, 107 Md. 393, 68 Atl. 1056, 126 Am. St. 393, 17 L. R. A. (N. S.) 477, the court said:

"It would be a great inconsistency and absurdity to accord to a testator the power to dispose of his estate in any way he may think proper, consistent with the settled principles of the law, and at the same time say that this will may be annulled, if it appears that its disposition is unjust, inequitable, or unaccountable. The effect of such a principle

13—68 WASH.

would be the practical denial of the free right of testamentary power in a very large class of cases."

The judgment is affirmed.

DUNBAR, C. J., ELLIS, and MORRIS, JJ., concur.