[No. 16019.  Department Two.  November 30, 1920.]

## *In the Matter of the Estate of* EUPHEMIA ROY, *Deceased, etc.*[1]

WILLS (7, 4)—MENTAL CAPACITY—EVIDENCE—WEIGHT AND SUFFIC-
IENCY.  Findings of mental capacity to execute a will are sustained
where it appears that the testatrix could without suggestion, name
every piece of property which she possessed and all the relatives
of the family, including daughters-in-law, grandchildren and sisters,
notwithstanding a physician, who saw her occasionally, gave a con-
trary opinion.

SAME (20)—EVIDENCE—SUFFICIENCY.  The law presumes mental
capacity, where a will is rational on its face and executed in legal
form; and evidence to overcome it must be cogent and convincing.

SAME (17, 20)—REQUISITES AND VALIDITY—EXECUTION—UNDUE IN-
FLUENCE—FRAUD—EVIDENCE—SUFFICIENCY.  The fact that testatrix
was told by her husband that they were getting old and ought to
make their wills, does not show undue influence impeaching a will
made shortly thereafter.

SAME (20)—FRAUD—EVIDENCE—SUFFICIENCY.  A will charging a
son with an advancement of $22,500 will not be set aside for fraud
on account of the husband's statement to the testatrix that they had
advanced $45,000 to the son out of their community property, where
it appears that the husband believed such statement to be substan-
ially correct.

Appeal from a judgment of the superior court for
King county, McCroskey, J., entered April 5, 1920,
dismissing a will contest, upon findings against the
petitioner, after a trial on the merits.  Affirmed.

*Earl G. Rice, Geo. H. Rummens,* and *Lloyd R. Sav-
age,* for appellant.

*Wright, Kelleher, Allen & Hilen,* for respondents.

MAIN, J.—This is a will contest.  The testatrix, at
the time of her death, left surviving her, as her heirs
at law, her husband, L. Roy, and three sons, the young-
est of whom is the contestant.  In the petition to set

[1]Reported in 193 Pac. 682.

aside the probate of the will, three charges are made: first, lack of testamentary capacity; second, undue influence; and third, fraudulent representations. Issues were joined upon all three. The cause was tried to the court without a jury, and resulted in findings of fact, conclusions of law, and a judgment unfavorable to the petitioner upon all the grounds. From this judgment the appeal is prosecuted.

The charges will be considered in the order stated, all of which present questions of fact upon which the trial court held against the petitioner. Upon the first charge, that of lack of testamentary capacity, the following may be taken as a summary of pertinent facts: Prior to 1913 the testatrix had been troubled for some years with insomnia. To relieve this, she began the use of intoxicating liquor, and in time became very much addicted to the use of that stimulant. To cure the habit she, on two or three occasions, was placed in a sanitarium. In March, 1913, she suffered a stroke of paralysis which affected her right side. In a few weeks she recovered from the severity of the stroke and thereafter was able to walk about, dragging the right foot a little. There was also a continuous impediment in her speech. In other respects she was normal; she was able to read the newspapers, plan the household affairs, walk about the neighborhood in which she and her husband lived, and go down town on shopping trips.

From the time she had the stroke until the time of her death, there was employed for her constantly a lady attendant, who assisted her in managing the affairs of the home, looked after her wants, and accompanied her upon all occasions when she went out. There is some evidence that, in the month of January, 1916, she had an illness the exact nature of which the

record does not make very clear. In any event, she had recovered from this and her condition was, generally speaking, such as has already been indicated. On March 28, 1916, she made her will, devising her interest in the community property to her husband for his lifetime, and then providing that it should go to the three sons, share and share alike, except that the youngest son, Clyde Roy, should be charged with an advancement of $22,500. Approximately two years and a half after the execution of the will, and on September 18, 1918, Mrs. Roy died. The will was admitted to probate and thereafter this contest was instituted.

Upon the trial, a number of friends and neighbors testified to facts which tended to show her mental capacity to make a will. One witness, a lady approximately fifty years of age, and apparently much above the average in intelligence, who had been her attendant and companion for a year prior to the execution of the will and for approximately two years thereafter, testified that Mrs. Roy could have named every piece of property which she and Mr. Roy owned, if asked to do so, without any suggestion whatever; that she could concentrate her mind sufficiently to do this, and that she could name the different relatives of the family, her sons, daughters-in-law, grandchildren and sisters without any suggestion, together with their relationship to her. This testimony, if true, would meet the requirements of the rule as to the mental capacity requisite to the execution of a valid will.

Upon the trial, the contestant offered the testimony of one Dr. H. S. Hill, who had been Mrs. Roy's attending physician at the time of the execution of the will, and for some time prior thereto. This testimony was received by the court over objection in order that the record, if the case was appealed to this court, might

be complete. The trial court declined to consider the testimony, believing that it was not admissible under § 1214 of Rem. & Bal. Code. It is strenuously urged that it was error not to consider this testimony, and if it had been given its due weight it would show lack of capacity to execute the will. Whether the testimony of the attending physician was admissible under the statute named, when offered by the contestant of the will, will not here be determined. It will be assumed only that the testimony is properly in the record.

The testimony of Dr. Hill, when taken in connection with all the other evidence in the case, is not sufficient to show lack of testamentary capacity. Dr. Hill did not make regular professional calls upon Mrs. Roy. From time to time he saw her but his calls were varied. He testified, when asked as to her mental capacity on the date the will was executed, that he could not "say exactly on that date. I may not have been at the house on that day, my calls were varied, I might have run along for a week or two weeks without seeing her, but in my opinion, at the time she was not mentally sound." Dr. Hill did not claim to be an expert on mental diseases. He was not in as good position as was the lady attendant above referred to to know whether Mrs. Roy could call to mind her property, the natural objects of her bounty, and her relationship to them. These questions he had not at any time discussed with her.

Under the evidence we think that Mrs. Roy, at the time she executed the will, had that quantum of understanding which is requisite to the valid execution of such an instrument. *Points v. Nier,* 91 Wash. 20, 157 Pac. 44, Ann. Cas. 1918A 1046. Wills are favored in the law, and it is a cardinal principle of construction that the testimony to overcome them must be cogent

and convincing. *In re Geissler's Estate,* 104 Wash. 452, 177 Pac. 330. Where the will, rational on the face of it, is shown to have been executed in legal form, the law presumes testamentary capacity. *In re Hanson's Estate,* 87 Wash. 113, 151 Pac. 264. As already indicated, upon this branch of the case the testimony of the attending physician, when taken in connection with all the other evidence, fails to establish lack of testamentary capacity.

Upon the question of undue influence, there is no substantial competent evidence in the record which would tend to impeach the will. The record only shows that Mr. Roy had told Mrs. Roy that they ought to make their wills, they were getting old, and then told her how he was going to make his. She thereupon told him that she would do the same thing. The wills were executed the same day but not at the same time. Mr. Roy was not present when the will here in controversy was executed. Mr. Roy's will was substantially the same as that of Mrs. Roy, he giving the property to her for her lifetime, with provision that it should go to the three sons, share and share alike, except that the youngest son, the contestant, should be charged with an advancement of $22,500. To vitiate a will on the ground of undue influence, the evidence must show that the testator's volition at the time of the testamentary act was controlled by another, and that the will was not the result of a free exercise of judgment and choice. *Converse v. Mix,* 63 Wash. 318, 115 Pac. 305; *In re Patterson's Estate,* 68 Wash. 377, 123 Pac. 515. The evidence fails to show undue influence.

The third charge is that of fraud. If we have gathered the argument correctly, the appellant contends that Mr. Roy had told Mrs. Roy that they had advanced to the contestant out of the community estate

for the business in which he was engaged approximately $45,000 and that this was not true in fact and constituted fraud. The evidence upon this question took a wide range, much of which has only a remote bearing upon the question, even if competent at all. In the will there was a clear expression of the testatrix's intention that the item of $22,500 charged should be treated as an advancement. This is conclusive upon the question, unless there was in fact fraud. *Younce v. Flory,* 77 Ohio 71, 83 N. E. 305; Rood on Wills, § 168; *In re Lear's Estate,* 146 Mo. App. 642, 124 S. W. 592. It is unnecessary here to determine the exact amount of money which had been advanced out of the community estate to the contestant. The evidence makes it plain enough that Mr. Roy, in representing to his wife that they had advanced to their youngest son the sum of $45,000, which had been consumed by him in the business in which he was engaged, believed that he was correctly stating the fact. The representation, assuming that it was not true, was honestly made, and was therefore not fraudulent. Thompson on Wills, § 531.

Something has been said about the will being an unnatural one, but this cannot be. It seems quite natural that the testatrix should give her property to her husband for his lifetime, and then direct that it be divided between their three sons, share and share alike, charging to one the advancement which she believed had been made to him. After reading the record with great care, and considering all the evidence, we are of the opinion that the evidence does not sustain any of the contestant's charges.

The judgment will be affirmed.

HOLCOMB, C. J., MOUNT, MITCHELL, and TOLMAN, JJ., concur.