[No. 25108.   Department One.   August 27, 1934.]

*In the Matter of the Estate of* JOHAN LUDVIK JOHANSON,
*Deceased.*

ALFRED C. OLESON *et al., Appellants,* v. HJALMER
JOHANSON *et al., Respondents.*[1]

*Shorett, Shorett & Taylor,* for appellants.

*Anderson & Jones* and *C. A. Norton,* for respondents.

MAIN, J.—This is a will contest.

Johan Ludvik Johanson died October 11, 1933, and thereafter what purported to be his last will and testament was offered for probate and rejected. The executor of the will and the chief beneficiary petitioned, contesting the rejection. The legal heirs of the deceased answered, and alleged, among other things, that the testator was mentally incompetent at the time he made the will. The case was tried to the court without a

[1]Reported in 35 P. (2d) 52.

jury, and resulted in a finding that the will offered for probate was "not the last will and testament of the deceased, said will bearing date June 27, 1933 and the said deceased was incompetent to execute said will." From the judgment entered rejecting the will and refusing its probate, the executor and the beneficiary appeal.

Mr. Johanson, at the time of his death, was seventy-seven years of age. He was a widower, his wife having died August 13, 1931. His only heirs at law were a brother and two sisters, the respondents, who reside in Finland. He had no children. August 9, 1932, Mr. Johanson entered into a contract with the Columbia Conference Home for the Aged by which, for a consideration which he paid, it was agreed that the home would care for him and support him during the remainder of his life. Thereafter, he resided at the home until July 5, 1933.

May 6, 1933, he executed a will, leaving four hundred dollars to his brother and the remainder to be equally divided between his two sisters. June 27, 1933, he made a second will, which is the one here in controversy, and revoked the prior will. The last will left ten dollars each to his brother and two sisters and the remainder of his property to the appellant George Lunn. After this second will was executed, and on the following 5th day of July, Mr. Johanson left the home for the aged, and thereafter lived in the home of Mr. and Mrs. Lunn until his death.

The only question presented to the trial court, as well as to this court, is whether Mr. Johanson had sufficient mental capacity to make the will of June 27, 1933. This presents purely a question of fact. It will be admitted that, in order to overcome a will, the evidence must be cogent and convincing. *In re Geissler's Estate,* 104 Wash. 452, 177 Pac. 330; *In re Roy's*

*Estate,* 113 Wash. 277, 193 Pac. 682; *In re Jones' Estate, ante* p. 433, 34 P. (2d) 1111. The inquiry then must be directed to whether the evidence in this case meets the requirements of that rule.

One of the witnesses to the will, who was the matron' in the home for the aged, testified that "she did not believe that he had mental or physical capacity to make a will, he was an old man and was bedridden but he would get up and walk around some." The other witness to the will, who was employed in the home as housemaid, testified that "she did not have any opinion as to his competency or incompetency." The attorney who drew the first will testified that he had great difficulty in determining just what Mr. Johanson wanted to do, and that

". . . he doubted very much his mental capacity at the time of drawing the will, but did not refuse to draw the will for the simple reason that he left all his money to his natural heirs."

A witness who had been the attorney for Mr. Johanson for a number of years prior to 1932, testified that, in that year, in his opinion, he was not competent to make a will. A doctor who was a practicing physician in Seattle, testified that he first saw Mr. Johanson in 1930; that he called on him again in 1931, and again in 1933. When he first called on him, it was necessary to amputate one of the great toes because the patient was suffering from a diabetic gangrene, he having at that time definite diabetes. The doctor testified that he saw the patient again in May, 1933, and that, at that time, he was mentally incompetent to make a will. If the testator was not competent in the year 1932 or in May, 1933, it would follow that he was not competent in June, 1933, because the evidence makes it reasonably plain that his condition continued to become

progressively worse. A witness who had been a nurse in the home for seven years, and to whom was assigned the duty of caring for Mr. Johanson, testified that

". . . she was of the opinion that he was mentally deficient while he was in the home; he got more and more enfeebled; at times he was childish, next day he was derisive and sometimes abusive."

There are some other facts and circumstances in the record which tend to support the judgment rejecting the will on the ground of lack of competency.

In support of the will, Mr. and Mrs. Lunn testified, unequivocally, that, at the time the will in question was made and thereafter while Mr. Johanson resided in their home, he was mentally competent. In addition to these two witnesses, there were ten or eleven witnesses, most of whom were friends or neighbors of Mr. and Mrs. Lunn, who saw and conversed with Mr. Johanson subsequent to the execution of the will of June 27th, and who testified to his competency. In addition to the testimony of these witnesses, there are some facts and circumstances in the record which would tend to support the will. The testimony upon the matter of whether Mr. Johanson had stated that he intended to leave anything to Mr. Lunn prior to the making of the will was directly in dispute, as was the testimony as to whether he had stated that he did not intend to leave anything to his brother and two sisters.

After reading and considering all the evidence as it appears in the record, we are of the opinion that the evidence offered in support of incompetency meets the requirements of the rule above stated, and that Mr. Johanson, at the time he executed the will here involved, lacked the necessary mental competency to do so. The question being purely one of fact, it would

632

serve no useful purpose to further review the evidence. The finding of the trial court as to incompetency will be sustained.

The judgment is affirmed.

BEALS, C. J., MITCHELL, STEINERT, and MILLARD, JJ., concur.