**STOLLE et al. v. KANETZKY.**    (No. 6374.)

(Court of Civil Appeals of Texas. San Antonio. March 31, 1920.)

**1. Wills ⏧⏧55(1)—Evidence held insufficient to support finding that testator was insane.**

In a suit to set aside a judgment admitting to probate the will of plaintiff's father on the ground of insanity, evidence *held* insufficient to justify finding that decedent was insane.

**2. Wills ⏧⏧166(2)—Evidence held insufficient to support finding of undue influence.**

In a suit to set aside the probate of a will on the ground that testator had been influenced unduly by his son who was plaintiff's brother, evidence *held* insufficient to support a finding that undue influence had been exercised.

**3. Wills ⏧⏧166(7)—Opportunity and destruction of former will insufficient to establish undue influence.**

Evidence of opportunity and the fact that a former will differing from the one in probate had been destroyed by the testator is insufficient to establish undue influence.

**4. Wills ⏧⏧163(1)—Burden of proof of undue influence is on person attacking will.**

In order to set aside the probate of a will on account of undue influence, the burden is on him who is attacking the will to show that testator has been induced to act contrary to his own wishes and to make a different will from one he would have made had he been left entirely free to act according to his own judgment and discretion, and such influence must have been in force at the very time of the execution of the will.

**5. Wills ⏧⏧82—Right to make testamentary bequests is absolute.**

Every citizen of Texas has the absolute right by his testamentary bequests to dispose of his property regardless of the ties of nature and relationship and in defiance of the rules of justice or the dictates of reason.

---

⏧⏧For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by Frederika Kanetzky against August Stolle and others to set aside a judgment admitting the will of Christian Stolle, deceased, to probate. On appeal to the district court upon the county court's refusal to set aside such order, judgment was rendered for plaintiff, and defendants appeal. Reversed and remanded.

H. B. Barnhart and D. H. Doom, both of Austin, for appellants.

Dickens & Dickens, of Austin, for appellee.

FLY, C. J. Appellee instituted suit in the county court of Travis county to set aside a judgment admitting the will of her deceased father, Christian Stolle, upon the grounds that the testator was at the time of executing the will of unsound mind, and that undue influence was exerted upon him to procure the execution of the will. The county court refused to set aside its order probating the will, and an appeal was taken to the district court. The cause was submitted, in that court, upon two special issues, as follows:

"Question No. 1. Was the deceased, Christian Stolle, of sound mind at the time of the execution of the instrument of date May 11, 1910, offered in evidence as his last will and testament?

"Question No. 2. Was the said Christian Stolle caused to execute the instrument of date May 11, 1910, offered in evidence as his last will and testament, by reason of undue influence (as that term is hereinafter explained) exerted upon or over him by August Stolle, one of the beneficiaries mentioned in said instrument?"

The first question was answered in the negative and the last in the affirmative; that is, that the testator was of unsound mind when he executed the will and that undue influence was used upon him by August Stolle to procure the execution of the will. The will in question was executed by Christian Stolle on May 11, 1910, by which he sought to bequeath to his son August Stolle, after the death of his wife, all of the real estate owned by the testator in Travis and Karnes counties, probably 199 acres of the value of $25,000; to his son Christian Stolle $4,000; and the same sum to his son Gustav Stolle; and to his daughter, Frederika Kanetzky, the sum of $10 and his "blessings." Appellee and her husband, Joe Kanetzky, were the only witnesses who swore that the testator was of unsound mind, the only other witness testifying as to the unsoundness of his mind being Charles Hamby, who testified that Christian Stolle got drunk, had a bad memory, and a mind not strong at any time. Mrs. Kanetzky swore that her "father drank a whole lot" of whisky, beer, and alcohol, and that "his mind was affected by drinking." Although not with him when the will was executed, she swore:

"My father's mind was unsound when he made that will. My father's mind was always weak, because of drinking so hard. He never was of sound mind since I can remember."

Joe Kanetzky, the husband of appellee, testified:

"Mr. Stolle drank considerable whisky and alcohol and one thing and another. I do not believe that Mr. Stolle was of sound mind along about 1909, 1910, and 1911, or else he would not have done what he did. The trouble with him was that he had all kinds of delusions. Mr. Stolle was not crazy all the time. I think he was crazy occasionally on account of drinking. He used to drink right smart."

As evidence of the insanity of the testator, this witness said that he gave 10 acres of land to his daughter and then took it away from her because he disliked the witness, and because the testator tried to get his wife to separate from the witness. Mrs. Kanetzky thought her father had "delusions" because he made her work and would not allow her to ride to the blacksmith shop. She had not lived with her father since her marriage in December, 1888. She married against the wishes of her father. She admitted that her parents conveyed 40 acres of land to her children, with a life interest in it to her. She stated that she never heard any one say that her father was insane, never heard the matter discussed by any one. She said:

"I base my testimony in regard to my father's mental condition upon the way he treated me and acted towards me, and the way he always made me work so hard."

Ten disinterested men, who had known Christian Stolle for many years, and from time to time had business relations with him, testified that he was a man of very vigorous mind, and that they had never known him to be so intoxicated as to be unable to attend to any and all business demanding his attention. Among these were his farmer friends and associates and two men connected with the bank in Austin with which he conducted his banking business.

[1] The jury had no evidence as to the insanity of Christian Stolle when he executed the will in 1910, except that of appellee and her husband, who based their conclusion as to his insanity on his treatment of his daughter prior to December, 1888, and his dislike for Joe Kanetzky. The evidence as to the insanity of the testator was too weak and unsatisfactory to justify a finding that he was insane, and, in addition, the evidence overwhelmingly preponderates in showing that Christian Stolle was a man of strong intelligence up to the time of his death.

[2] The only evidence tending to show undue influence was the fact that August Stolle,

the youngest child, lived with his father and mother until the death of his father, and then lived with his mother, to whom had been bequeathed all of the property during her life, and the statements attributed to August Stolle that "he got Papa to put in the will to just give me $10," and that he caused the testator to destroy a former will. Upon that evidence, coupled with the supposed incapacity of testator, the jury must have rested the finding that August Stolle had unduly influenced the testator in making his will. August Stolle denied that he had used any influence to procure the execution of the will, and never at any time told Mrs. Kanetzky that he had procured the destruction of a former will and the execution of another. He swore that he did not know that his father had executed another will until after his death, and never read the will until after it had been placed in the hands of an attorney to be probated. Ten or twelve witnesses testified that Christian Stolle attended to his business alone and without the advice of any one. The evidence tended to show that he was a man self-reliant and not easily influenced. There is not one single circumstance tending to show that Christian Stolle had ever been influenced in any business transaction by August Stolle.

[3, 4] Evidence of opportunity and the fact that a former will differing from the latter had been destroyed by the testator would not establish undue influence. Barry v. Graciette, 71 S. W. 309. In order to set aside the probate of a will on account of undue influence, the burden is on him who is attacking the will to show the testator had been induced to act contrary to his own wishes and to make a different will from one he would have made had he been left entirely free to act according to his own judgment and discretion. His free agency must have been shown to have been destroyed by the influence of another, and that influence must have been in force and effect at the very time of the execution of the will. Barry v. Graciette, herein cited.

As said by this court, in an admirable opinion delivered by Associate Justice Neill, in Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98:

"Undue influence, legally speaking, must be such as in some measure destroys the free agency of the testator. It must be sufficient to prevent the exercise of that discretion which the law requires in relation to every testamentary disposition. It is not enough that the testator is persuaded by solicitation or argument from disposing of his property as he previously intended; he may yield to the persuasion of affection or attachment, and allow that sway to be exercised over his mind; and in neither of these cases would the law regard the influence as undue. To amount to this, it must be equivalent to moral coercion; it must constrain its subject to do what is against his

will, but which from fear, the desire of peace, or some other feeling, he was unable to resist and, when this is so, the act which is the result of that influence is vitiated. Gilbert v. Gilbert, 22 Ala. 529 [58 Am. Dec. 268]. * * * To avoid a will on the ground of undue influence, it must appear that the influence was exercised upon the very act of making the will. The fact that the testator was under the general and even the controlling influence of another person in the conduct of his affairs will not suffice to invalidate the will, unless that influence was specially exerted upon the testamentary act."

[5] It is highly probable that the fact that Mrs. Kanetzky was an only daughter, who had labored hard for her parents, had an influence upon the minds of the jury. It is the common idea that every child has the right to some of the property of the parents upon their decease, and the mere fact alone that a child is disinherited often exerts a potent influence over the minds of an average jury. But that is not the law in this state. Each and every citizen of Texas has the absolute right by his testamentary bequests to dispose of his property regardless of the ties of nature and relationship, and in defiance of the rules of justice or the dictates of reason "and no sentimental considerations of love and affection that should actuate a man in dealing with his own blood can be decisive as to the validity of a will that has been executed by a person possessing testamentary capacity and without undue influence." Barry v. Graciette, 71 S. W. 309; Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 443.

The burden rested upon appellee, in an attack upon a judgment probating the will, to prove the grounds upon which it was sought to destroy the will. Cook v. Denike, 216 S. W. 437; Leahy v. Timon, 204 S. W. 1029. To meet this burden we have an unfounded attack made upon the sanity of a man noted for his virile force and capability for business, and an attack based on the fact that he compelled appellee to work in the field and then disinherited her. Admitting as true the statement attributed by appellee to August Stolle as to his influencing the destruction of the first will and the execution of the last one, that statement does not show undue influence. If the utterly improbable story of the man who had accomplished such things, going voluntarily to the one against whom he had used his influence, could be reasonably credited, it went no further than to show that he had exercised legitimate persuasion upon his father, and furnishes no evidence of undue influence. L. N. Goldbeck, who drew the will and was present when it was signed, testified that Christian Stolle was perfectly sane at the time and that August Stolle was not present. That evidence is uncontradicted. The witness testified to the execution at different

times of other documents by Christian Stolle and that August was never present. There was absolutely no testimony that tended to prove that August Stolle had ever exerted any undue influence over his father, even if it can be credited that he made the statements attributed to him by appellee. Under the evidence, no influence, undue or otherwise, was exerted towards Christian Stolle; but the uncontroverted evidence showed that he took his wife with him to the scrivener and told him how they desired to dispose of their property, and each executed a will. There was no influence brought to bear directly on the testamentary act, but the act of the testator was the act of an intelligent, free agent. He had cause to be displeased with a daughter who had, contrary to his wishes, married a man disliked by and obnoxious to him. August Stolle had stayed with his parents, and the testator doubtless had reasons for favoring him in the distribution of the property. As said by the Supreme Court of Washington, in Converse v. Mix, 63 Wash. 318, 115 Pac. 305:

"It is not surprising nor unnatural, therefore, that she should make him the object of her greatest bounty; and, while her affection for this son may have influenced her to remember him in her will to the partial exclusion of her other son and her daughter, it is not that character of influence that is classed by the law as undue influence, or that character of influence that authorizes the courts to vacate and hold for naught last wills and testaments."

Not only was there no evidence of undue influence, but the evidence revealed the fact that Christian Stolle had given Mrs. Kanetzky and her children property of the probable value of that given to the two sons other than August. We may presume that the Kanetzkys were in very comfortable financial circumstances, from the fact that the husband disclaimed any interest whatever in his wife recovering $10,000 or more from her father's estate. It seemed to be a trivial matter with Joe Kanetzky, and probably the testator knew that his daughter did not need anything from his estate.

The judgment is reversed, and the cause remanded.