**KOPHAL et al. v. JANTZ et al.** (No. 552.)

Court of Civil Appeals of Texas. Waco. July 5, 1927.

**1. Wills ⊙166(2)—Evidence held insufficient to show undue influence by wife over husband in making will.**

Evidence *held* insufficient to show that third wife exercised undue influence over husband in making of his will.

**2. Appeal and error ⊙1003—Appellate court must reverse verdict if overwhelmingly against weight of evidence and clearly wrong.**

Appellant court must reverse the verdict of a jury on a question of fact when convinced that the verdict is overwhelmingly against the evidence and clearly wrong.

**3. Wills ⊙163(1)—Burden is on one attacking will for alleged undue influence to show testator would have made different will if left to own judgment.**

Burden is on one attacking will on ground of undue influence to show that the testator was induced by influence in force at the very time of the will's execution to make the will different from one he would have made if left free to act under his own judgment and discretion.

**4. Wills ⊙166(12)—Undue influence, procuring execution of will, may be shown by circumstances.**

Undue influence, procuring execution of a will, may be shown by circumstances if they are so connected and of such probative force as to lead a well guarded mind to a reasonable conclusion that the alleged influence existed and controlled the testator's mind at the time of the execution.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Application by W. H. Kophal for the probate of the will of J. H. Kemme, deceased. The county court admitted the will to probate, and the contestants, Emma Jantz and another, appealed to the district court. From a judgment in favor of the contestants deny-ing the probate, the proponent and another appeal. Reversed and remanded.

Sleeper, Boynton & Kendall, of Waco, for appellants.

John A. Hughes, of Waco, for appellees.

STANFORD, J. J. H. Kemme, deceased, died in McLennan county, Tex., July 8, 1925, leaving a will dated April 12, 1924, which will named W. H. Kophal as independent executor. W. H. Kophal duly filed application to probate said will, to which application appellees filed their contest. A hearing was had in the county court, and on January 13, 1926, by order of said date, the contest was denied, and the will, after being duly proved by the testimony of one of the subscribing witnesses, was duly admitted to probate. Appellees appealed to the district court, where the case was tried on appellees' amended petition, in which they alleged that said will was not the will of J. H. Kemme, deceased, because it was executed by the testator by reason of undue influence exercised over him by appellants W. H. Kophal and Mrs. Anna Kemme. Appellants answered by general and special exceptions, and specially denied that they exercised any influence over the deceased as to the provisions of said will, or as to how he should dispose of his property by the terms of said will, etc. The case was submitted to a jury upon one special issue, as follows:

"Did J. H. Kemme, deceased, make his will as the result of undue influence exercised over him by his wife, Mrs. J. H. Kemme? Answer 'Yes' or 'No,'"

—to which the jury answered, "Yes," and on which finding the court entered judgment refusing the probate of said will, and directed said judgment to be certified to the county court for observance; which judgment appellants here present for review by this court.

[1] Appellants present four assignments. In the first three the contention is made in various ways, in effect, that there was no evidence authorizing the submission of any issue to the jury and none to support their answer to the special issue submitted. In their fourth assignment appellants contend, in effect, that the court erred in refusing to grant their motion to set aside the verdict and grant a new trial, because the evidence was insufficient to support such verdict. As the decision of the last question will necessarily determine this appeal, we will consider only the sufficiency of the evidence to support the verdict.

The record discloses that J. H. Kemme had been married three times, his first wife being Mrs. Johanna Kemme; his second wife, Mrs. Adelaide Kemme; and his third wife, Mrs. Anna Kemme. By his first wife he had Mrs. Emma Jantz, the contestant or appellee

herein, and Mrs. Meta Kophal, wife of W. H. Kophal, and W. C. Kemme; and by his second wife, Adelaide Kemme, he had one child, Henry Kemme. He had no children by his last wife, Anna Kemme. W. H. Kophal, who was a son of the said Anna Kemme by a former husband, married Meta Kemme, a daughter of J. H. Kemme by his first wife, so Anna Kemme, the surviving wife of J. H. Kemme, deceased, was both the stepmother and mother-in-law of Meta Kophal. The first wife of J. H. Kemme, deceased, died January 26, 1910, and at the time J. H. Kemme married his third wife, Anna Kemme, he claimed to have settled with his children by his first wife for their mother's interest in the community estate of himself and Johanna Kemme, deceased, but whether he had or not is immaterial here, as such question is not involved. At any rate, at the time J. H. Kemme and his last wife, Anna Kemme, were married, they each owned a separate estate, the estate of J. H. Kemme being of the value of about $9,000 and consisting entirely of personal property. On April 12, 1924, the said J. H. Kemme executed a will, by the terms of which he bequeathed to his wife, Anna Kemme, one-half of all his property, to have and to told the same in fee simple forever. He also in said will bequeathed to his son, Henry Kemme, the sum of $1,500, to be paid out of the residue of his estate after deducting the one-half interest devised to his wife; and the remainder of his estate he bequeathed to his other three children, Meta Kophal, Emma Jantz, and W. C. Kemme. He also appointed W. H. Kophal independent executor of said will without bond, etc., and also appointed W. H. Kophal testamentary guardian of the estate of his minor son, Henry Kemme, and directed that he invest the $1,500 devised to his son, Henry, and to use the income therefrom for his education and support until he arrives at the age of 21 years, when he shall pay same over to Henry. This will is in due form and properly witnessed by W. M. Sleeper and Ben H. Sleeper. The execution of the will with all due formalities was properly proved on the trial by one of the subscribing witnesses. This witness further testified that he was the attorney who drafted the will, and that he drew it up at the testator's request and in accordance with testator's instructions, and that when the will was executed testator appeared to be perfectly sound of mind. The only other testimony bearing directly upon the execution of the will was that of Mrs. Anna Kemme, who testified, in substance, that she was going to Fredericksburg on an excursion, and that her husband, J. H. Kemme, sugggested she make a will and she consented, and she and her husband went together to Judge Sleeper's office and she made her will and it was read to her and her husband and was satisfactory to both, whereupon she executed same; that after she made

297 S.W.—22

her will, her husband, J. H. Kemme, said while he was in the lawyer's office he thought he would make his will, too, and he did; that she never discussed with her husband the making of his will before he made it; that she never mentioned it to him, and she did not know what he was going to put in his will before they went to Judge Sleeper's office. In said will of Anna Kemme she devised to her husband, J. H. Kemme, a house and lot in Waco for which she paid $5,500, and she made him beneficiary of life insurance policies aggregating $1,500. The wills of both Anna Kemme and J. H. Kemme were left with Judge Sleeper for safe-keeping, and Mrs. Kemme did not see them again until after her husband's death.

There is no controversy about the facts, as above stated, and no evidence contradicting the evidence of Mrs. Anna Kemme bearing directly upon the execution of the will. Contestant, appellee herein, pleaded undue influence by Anna Kemme and W. H. Kophal, as grounds for setting aside said will. The only issue submitted to the jury was whether or not J. H. Kemme executed said will as the result of undue influence exercised over him by his wife, Mrs. Anna Kemme. Evidently the court held there was no evidence raising such issue as to W. H. Kophal. So the only question to be determined is the sufficiency of the evidence to sustain the finding of the jury to the effect that said will was executed by J. H. Kemme as a result of undue influence of his wife, Anna Kemme, exercised over him. As tending to sustain the finding of the jury, appellee says, in effect, that Mrs. Kemme was a woman of strong and resolute character, while Mr. Kemme was a man oppositely constituted. Some of the witnesses testified, in effect, that J. H. Kemme was not a man of firm and resolute characteristics, and others testified when he made up his mind he could not be changed. Again, appellee refers to a meeting of all the interested parties soon after the marriage of J. H. Kemme and his wife, Anna, as testified to by Willie Kemme. According to this evidence, J. H. Kemme and wife, with all their children except Mr. Kemme's son, Willie, met at the old home place to discuss the separate property rights of J. H. and Anna Kemme. Mr. Kemme expressed a desire that Willie be present, and Anna Kemme and two daughters went to the field and got Willie, and that after they got to the house Mrs. Kemme said that "what was Kemme's should remain Kemme's, and what was Kophal's should remain Kophal's," evidently meaning J. H. Kemme's separate property should remain his, and her separate property derived from the estate of her former husband, Kophal, continue to belong to her. This witness further testified that after this meeting broke up W. H. Kophal got mad and made a threat against J. H. Kemme because he thought Kemme was trying to interfere with his mother's business, etc. The

meeting above referred to was, according to the record, nearly three years before the will was made by J. H. Kemme. As we view the record, there was nothing said or done by Anna Kemme, or any one on her behalf on this occasion, that in any way tended to influence J. H. Kemme in the disposition of his property or in anything else. Appellee says further:

"Mrs. Anna Kemme testified on direct examination, in substance, that Mr. Kemme would have done what she told him to do. In the next breath she contradicted this and said she could do nothing with him."

This was not in reference to a will or the disposition of property, but was in reference to J. H. Kemme's collecting rents due him by his son Willie, in which conversation Anna Kemme advised her husband to not try to collect said rent, but to let it go, to keep peace, etc., and said statement was on cross-examination. Appellee says further:

"She (Anna Kemme) testified on redirect examination: 'I didn't tell him then that he should provide for Willie and treat him just like the other children; that was at the time we got married again (meaning the second marriage) when I told him to treat Willie Kemme right, to make it even so there would be peace in the family.'"

Willie Kemme was a son of J. H. Kemme by his first wife. It was Willie who owed his father rent that he had been trying to collect. It might be inferred that his father had expressed an intention to leave him out of his will, and his wife advised him to "treat Willie right, to make it even so there would be peace in the family." This conversation occurred about two years before the will was made. This might indicate they were discussing the making of a will by J. H. Kemme, and that his wife advised him, but there could be nothing improper in her so doing. She certainly gave him good advice. There is nothing in this conversation to indicate she was trying to improperly influence her husband. There was some evidence that J. H. Kemme expressed the intention of providing for little Henry Kemme so he would get as much as his other children. There were three children by his first wife; one, little Henry, by his second wife; and none by Anna Kemme, his third wife. As little Henry, not being a child of the first wife, took nothing from her, we think it quite natural for the father to want to give him a double portion in order that he might have an equal portion with the others. In any event, this certainly did not indicate that Anna Kemme, who was not related to little Henry except by marriage, improperly influenced her husband in the making of said will. We have examined the statement of facts carefully, and as we view it practically the only evidence that could in any way tend to support the finding of the jury is that Anna Kemme was a woman of strong will power, and that J. H. Kemme was

a man not of strong will power, although this was denied by some of the witnesses; that J. H. Kemme was unhappy; that he threatened suicide, and would cry if some one said or did anything that did not suit him; that a part of the time he would sleep upstairs on the floor by the chimney. But the record fails to show the cause of his unhappiness or the time of same, or that same had, in any way, any bearing upon his making the will. It is just as reasonable to attribute his unhappiness to the conduct of his older children, as to attribute it to any misconduct on the part of his wife.

On the other hand, there is no question but that the will was in due form; that it was written by Judge Sleeper in his office, who testified that he wrote it at the request of J. H. Kemme, and that he wrote it as J. H. Kemme requested him to write it. There is no question but that it was executed and witnessed under all the solemnities required by law, and left with Judge Sleeper for safekeeping, and that Anna Kemme never saw it again until after J. H. Kemme's death. It was more than a year after the will was written that he died. There is no evidence of how old he was at the time he made the will, no evidence that he was feeble or in any way afflicted, no evidence that he was not of sound mind. In fact, there is not a circumstance connected with, or leading up to the execution of the will, as we view the record, that casts suspicion upon said transaction—at most, not a circumstance that occurred within two years prior to its execution. It appears from the face of the will that Mr. Kemme was conservative and was trying to be fair. His property was all personal property of the proximate value of $9,000. He gave his wife, Anna, one half, his son, Henry, $1,500, to be taken out of the other half, and the remainder to his three other children, share and share alike.

[2] While our appellate courts hesitate to reverse the verdict of a jury on a question of fact, yet such courts are not only clothed with the authority, but it is their legal duty and they are expected to perform such duty, when they are convinced that a verdict is overwhelmingly and manifestly against the evidence and is clearly wrong. Stolle et al. v. Kanetzky (Tex. Civ. App.) 220 S. W. 557; Stolle et al. v. Kanetzky (Tex. Civ. App.) 238 S. W. 724; Holmes v. Houston (Tex Civ. App.) 241 S. W. 1051.

[3] In order to set aside the probate of a will on account of undue influence, the burden is on him who attacks the will to show the testator had been induced to act contrary to his own wishes and to make a different will from one he would have made had he been left entirely free to act according to his own judgment and discretion. His free agency must have been shown to have been destroyed by the influence of another, and that influence must have been in force and effect

at the very time of the execution of the will. Barry v. Graciette (Tex. Civ. App.) 71 S. W. 309; Stolle v. Kanetzky (Tex. Civ. App.) 220 S. W. 557. Or, as said in Salinas v. Garcia (Tex. Civ. App.) 135 S. W. 588, writ of error denied:

"Not every influence brought to bear upon the mind of a testator by a beneficiary will be classed as undue influence. Persuasion, entreaty, cajolery, importunity, argument, intercession, and solicitation are permissible, and cannot be held to be undue influence unless they subverted and overthrew the will of the testator and cause him to do a thing that he did not desire to do." Holmes v. Houston (Tex. Civ. App.) 241 S. W. 1039; Skeeters et al. v. Hodges et al. (Tex. Civ. App.) 270 S. W. 907; Shelton v. Shelton (Tex. Civ. App.) 281 S. W. 331, and cases cited; 18 C. J. p. 236.

[4] We recognize the rule that undue influence, as that term is understood in connection with the execution of wills, may be shown by circumstances, and in the very nature of things such issue would have to be established by such evidence in most cases. In order, however, to establish the issue by such evidence, the circumstances relied upon must be so connected and of such probative force as to lead a well guarded mind to a reasonable conclusion that such influence was exercised prior to the execution of the will, and that it operated upon and controlled the will power of the testator at the time he executed such will. We think the evidence is wholly insufficient to support the finding of the jury, and that such finding is not only overwhelmingly against the manifest weight of the evidence, but that it is clearly wrong. We sustain appellants' assignments and reverse and remand said cause.