In re Final Settlement of Estate of JAMES W. LEAR,
Deceased; ELLA G. TOMPKINS and WEEDEN
C. TOMPKINS, Her Husband, Respondents, v.
GEORGE E. LEAR, Executor, Appellant.

**St. Louis Court of Appeals. Submitted on Briefs January 3, 1910.
Opinion Filed January 18, 1910.**

1. **WILLS: Advancements: Hotchpot.** Where, under the terms
of a will, the testator's property is to be divided equally
among his children, the advancements made to them to be
considered in ascertaining their respective shares, the assets
of the estate are not thrown into hotchpot, the doctrine of
bringing advances into hotchpot applying only in cases of
intestacy.

2. ———: ———: **Evidence: Testator's Book Conclusive, When.**
Where testator declared in his will that he had prepared a
statement of accounts with each of his children up to a desig-
nated date, contained in a book marked "Book of Charges and
Advancements," and that such advancements should be con-
sidered in distributing the estate, as he intended to divide his
estate equally among his children, the statement of the
amount of the advancements as shown in the book was con-
clusive on the children, and evidence of mistakes in the amounts
as set forth therein was inadmissible, in the absence of evi-
dence of payment of later lates than the dates in the book.

Appeal from Ralls Circuit Court.—*Hon. David H. Eby,*
Judge.

REVERSED AND REMANDED (*with directions*).

*Reuben F. Roy* for appellant.

The will of Lear was conclusive as to the charges
and advancements made to Tompkins and the payments
made by him. The courts have no power to say that
the testator made a mistake in said book of advance-
ments. That book is a part of the will and it is evident
that the main purpose of the testator was by his will
to settle the question of those accounts so as to save

dissensions after his death. 3 Redfield on Wills (3 Ed.), p. 49; Younce v. Feary, 77 Oh. St. 71; Baker v. Trust Co., 49 Mo. App. 623; In re Rohrer's Estate, 17 Larc., Law Review, 393; Vitt v. Clark, 66 Mo. App. 214; In re Schell's Estate, 15 Pa. Co. Ch. R. 372.

*James O. Allison* and *David Wallace* for respondent

STATEMENT.—One James W. Lear died February 16, 1903, leaving a will, which it seems was executed or dated June 1, 1901, and duly admitted to probate by the Probate Court of Ralls county, Missouri, May 19, 1903. The first item provides for payment of debts. The second item reads: "Second: Intending to divide my estate equally and justly among my five children, to-wit:

"George E. Lear, Bettie Lear, Mary E. Maddox, wife of Shelvy Maddox, Ella G. Tompkins, wife of Weeden C. Tompkins, and Annie S. Strode, wife of George C. Strode, I have prepared a full statement of accounts with each and all of them up to December, 1900, intending the interest at five per cent per annum (to which rate I voluntarily reduced the interest on Jan. 1, 1895) with all proper credits, if any, shall be continued up to my death. Said account is stated in a book with a leather back marked as follows: 'James W. Lear's *Book of Charges and Advancements* to his several children to be considered with my last will dated June 1, 1901. Signed James W. Lear.' No interest is intended to be charged on the sums of $300 respectively given to Mary E. Maddox, Ella G. Tompkins and Annie S. Strode, but only the principal sum was or is intended to be charged. But neither my son, George E. Lear, nor my daughter, Bettie Lear, . . . has received anything. And in each and every case wherein I have *advanced for* or loaned to or in any wise become bound to pay any money for any one of the respective hus-

bands, to-wit: Shelvy Maddox, W. C. Tompkins or George C. Strode of my said daughters, Mary E., Ella G., or Annie S., all was done because they were such husbands, and to aid them mutually for their benefit of themselves and their respective families for the time being, so that any and all such *advancements,* loans or securities remaining unpaid or unsettled at my death were intended to be and must be charged as furnished or supplied for the aid and benefit for the wife of the husband so owing any such amount with interest *as shown in said stated account in my said book,* and on final settlement of my estate they shall be charged with and shall respectively refund to my estate all amounts necessary to make each of my said five children equal in the final distribution of estate."

The third item gives to George E. Lear and Bettie Lear $300 each to correspond with similar sums given to the three married daughters on their respective marriages, and $500 each to George and Bettie for special services rendered by them which is not to be charged against them in the division.

The fourth item reads as follows:

"Item Fourth: To enable Weeden C. Tompkins to buy the Henry H. Bowles farm, on which he now lives, I advanced and paid for him twenty-seven hundred dollars, one-half of the purchase money, and took from him a deed, dated March 1, 1886 (not recorded), for one-half share and interest of said farm, but afterwards on January 2, 1898, said Tompkins and I entered into a contract in writing (in duplicate) in the nature of a lease and conditional sale, which I direct and wish to be executed in good faith according to its terms, except only, that from and since January 1, 1895, I voluntarily reduced the interest to five per cent per annum, as will appear by the stated account in my Book of Advancements at page four and following."

The fifth item appointed George E. Lear executor, giving him power to make necessary deeds and conveyances.

The sixth and seventh items are not set out and it is said in the appellant's abstract that they are not necessary to the understanding of the case.

The eighth item is as follows:

"Item Eight: *Subject to and in accordance with the foregoing seven provisions* I wish all the rest, residue and remainder of my estate of whatever kinds or nature to be so divided among my five children already named in the second clause or provisions hereof, so that they shall be provided for and made equal, earnestly desiring and requesting that all may be done and all matters be settled in a mutual and kind spirit and feeling, of course none are expected to refund more than enough to make all the others equal, which I feel assured will be done cheerfully." (The italics are not in the will.)

The "book of advancements" referred to in the will (and as to its identity there is no controversy whatever), which is copied in full, on page 4 has this heading: "Ella G., and W. C. Tompkins, her husband in apc. to James W. Lear, for *advancements,* subject to the terms and conditions of my last will dated ———, 1901. All prior matters are settled and omitted except only $300, cash advanced and paid to them when they were married." Then follows a statement of items showing the balance advanced to Ella G. and W. C. Tompkins down to December 31st, amounting to $4620.56. Following this is an entry of date September 27, 1902, crediting by check of $56, so that, according to this book of advancements, the total advances after proper credits have been allowed thereon made to respondents, Tompkins and wife, was $4570.56. The book also showed advances to Mrs. Maddox and her husband to the amount of $3025.63; to Mrs. Strode and her husband $2167.95.

The executor duly qualified and after making first annual settlement submitted his final settlement. In his first annual settlement made November 12, 1904, he charged himself with $5934.22, which was made up of the amount of property turned over as per inventory, $3098.22, and $2836 received of W. C. Tompkins, he taking credit for payments amounting to $2023.65, which included payments of the legacies to George and Bettie, $800 each, leaving a balance on hand at that settlement of $3910.77. In August, 1906, he presented his final settlement to the probate court, in which he charged himself with the balance of the first settlement $3910.77, and with $598.06, the amount received from Maddox and wife, a total of $4508.83. He asked credit for $372.57 for probate costs and his own commission, the latter amounting to $326.61, and asked credit for $691.96 paid Ella and W. C. Tompkins, $295.04 paid Annie Strode, $1574.65 paid Bettie Lear and a like amount paid George Lear, making total disbursements of $4508.87, four cents over the amount with which he charged himself. In brief the executor collected the assets and made final settlement and paid out the money of the estate on the theory that the book of advancements was conclusive, under the language of the will, as to the amounts of advances and credits thereon. Respondents here, Weeden C. Tompkins and wife, filed their objections to this settlement in the probate court, which in substance are founded on the claim that the amount appearing in the book of charges and advancements as standing against them is not correct, and is open to attack by them, and that they are entitled to show the real amount of charges and advancements which should be allowed against them, they claiming that they had discharged all of the loans and indebtedness and advancements, except about the sum of $2836, which sum they aver they had paid the executor and which amount it was claimed paid off, settled and dis-

charged all the indebtedness of W. C. Tompkins to the testator.

The probate court found in favor of the objectors in the amount of $603. The executor duly prosecuted his appeal from this to the circuit court, where upon trial before a referee $1250.33 was allowed in favor of the objectors. On exceptions to this made by the executor the circuit court sustained the exceptions as to $291.33, of the amount allowed by the referee and allowed respondents $968.89. The referee had allowed respondent Tompkins to testify as to certain payments, loss of checks, etc., and to covering the alleged payments. On exception to this in the circuit court, the exception was sustained and the court ordered that the final settlement of the executor be modified accordingly and that an order of distribution be made in conformity with this finding. From this the executor has duly perfected an appeal to this court.

REYNOLDS, P. J. (after stating the facts).— From the foregoing statement it will appear that the sole question involved in this case is, whether or not the entries in the "book of advancements," of the account between the testator and his daughter Ella and her husband, W. C. Tompkins, are conclusive as to the amount of advancements with which they are chargeable, corrected by any credits accruing between its date, December, 1900, and the date of the death of the testator, which occurred February 16, 1903.

Whether money or property passing from father to children is to be held to be a gift or an advancement has been a question of much learned discussion and has been passed upon in many cases. No such question is here involved; the testator has very clearly settled that by his will, and has therein clearly specified into what class the moneys from time to time passing from him to his children are to fall. Nor are we to treat this case as one in which the assets and property are thrown

into hotchpot. For, as said by Judge BLACK in Turpin v. Turpin, 88 Mo. 337, 11 S. W. 739 (1. c. 340), "the doctrine of bringing advances into hotchpot applies only in cases of intestacy. [4 Kent, Com. (13 Ed.), p. 418; 2 Williams Ex. (Am. notes), p. 1608.] . . . In this State the matter is governed by statute and the statute only applies to children of persons dying intestate." Reference is made to sections 2166 and 2167, Revised Statutes 1879, now sections 2913, 2914, Revised Statutes 1899. See also In re Estate of Williams, 62 Mo. App. 339, where a very learned and full discussion of the law of advancements and some account of the meaning and origin of the term "hotchpot" will also be found, the adopted meaning of the term "advancement," being "money or property given to a child by the father, or any one *in loco parentis,* in anticipation of inheritance." See also 2 Woerner, Am. Law of Administration (2 Ed.), bottom of page 1322. "Hotchpot is in English, a pudding," and "by this housewifely metaphor, our ancestors meant to inform us that the lands, both those given in frank marriage and those descending in fee-simple, should be mixed and blended together and then divided in equal portions among all the daughters."

Recurring then to the main question in the case, namely, whether the statement of the amount of advancements, as made out by the testator in his book of advancements, is conclusive on these respondents, we hold that it is. In Turpin v. Turpin, supra, Judge BLACK (1. c. 341), after stating that the children of the testator are "all provided for in the will; one is by the will charged with the advancement, the others are not, though two were advanced before the date of the codicil," says, "The will must control."

In Ray v. Loper, 65 Mo. 470, Judge HENRY, speaking for our Supreme Court, says: "When the parent gives property to the child he may, at the time, fix upon it what value he pleases as an advancement, or he may

do so in his will, or probably by a memorandum charging it against the child as an advancement."

In Nelson v. Nelson, 90 Mo. 460, 2 S. W. 413, Judge BLACK citing Ray v. Loper, says: "Of course, the parent can, at any time, charge the child, by will, executed in accordance with the statute, with moneys as advancements."

In Ladd v. Stephens, 147 Mo. 319, l. c. 333-4, 48 S. W. 915, Judge MARSHALL cites and quotes approvingly Ray v. Loper, supra, as laying down the rule that the parent at the time he gives property to the child by way of advancement may fix upon it whatever value he pleases, or he may do it by will; and the court holds that value so fixed conclusive on the heir.

In re Estate of St. Vrain, 1 Mo. App. 294, the court, citing the statute (now sec. 2913, R. S. 1899) as providing that a child having received any of the real or personal estate of the ancestor by way of advancement, "shall take no part of the estate descended unless they bring such advancements into hotchpot with the estate descended," held that the probate court in making order of distribution properly took into consideration advances made to certain heirs who had received advances but did not throw them into the estate for distribution, and committed no error in excluding such heirs from participation in the distribution. Affirmed In re Estate of Elliott, supra, and in Turpin v. Turpin, supra, and Estate of Williams, supra.

It is true that Judge Woerner, 2 Am. Law of Administration, foot page 1332, says: "So where a testator has provided that such sums as were charged to his children in his books should be deducted, it was allowed to be shown that charges so made had been repaid before the testator's death, or were false." The learned judge cites but two cases in support of this general declaration, namely, In re Musselman's Estate, 5 Watts 9, and Hoak v. Hoak, 5 Watts 80. We are reluctantly compelled to say that an examination of those

cases does not sustain the text, if the text is to be taken as the declaration of a general rule.   In the Musselman case the court found that the will did not, by its own terms, make the book of advancements conclusive.   It is said in the opinion, after noting this, that the testator might, doubtless, "have peremptorily directed the book, in whatever condition found at his death, to be taken for conclusive proof of the state of the accounts; but he has not done so, and we are not to intend that he meant to leave the adjustment of the shares of his off-spring to the arbitrament of chance."

In Hoak v. Hoak, 5 Watts 80, the will of the testator provided that each of his legatees should be "charged in the distribution with what I have given them, or shall have given them, at the time of my death, and with which I have charged them in my book and in my foregoing will and testament."   Evidence was offered tending to show that the sums charged in the book had not been actually given, paid or advanced by the testator to them but that a much smaller sum had been given them.   This evidence was objected to on the ground of its being irrelevant, because the charges in the testator's book were conclusive.   The trial court sustained the objection but the Supreme Court held that the objection was well taken.   Calling attention to the language of the will, the court says (l. c. 82) : "Now it is abundantly clear, from this clause, that the testator never thought of charging his children, whom he had made his legatees, with what he had never given to them, but intended merely to charge them, severally, with that which he had given, or thereafter should actually advance and give to each.   It is also manifest that he directed this to be done for the purpose of making them equal participants in his estate, by taking into the account as well what he had given them in his lifetime, as what he should leave them at his death.   It must be observed that he does not direct that they shall be charged with what he had given *or* charged in his book,

which possibly might have afforded some pretense for making the charge sufficient without the gift; but he has directed that each shall be charged with what he had given to him or should thereafter give, *and* charge in his book; thus coupling the gift or actual advancement of the thing, with the charge, by the conjunction *and,* and making most clearly, as it were, the former the only ground for the warrant of the latter, so that the latter cannot exist without the former."

In Schell's Estate, a case reported 15 Pa. C. C. 372, also 3 Pa. Dist. R. 738, and arising in the Orphans' Court of Phila. Co., a later Pennsylvania case, and it is true, not in the Supreme Court, the court lays down the proposition that in disposing of an estate, the testator is at liberty to subject his legatees to whatever terms he may in his discretion impose. Where a testator fixed by his will certain sums set forth in his account books as the amounts due him from his sons and directed that those sums should be deducted from their respective shares of his estate, this was conclusive on the sons' claim under the will; that in disposing of his estate the testator is at liberty to subject his legatees to any terms in his own discretion. He could use the entries in his books, whether they were true or fictitious, as an arbitrary measure of his sons' share in his estate; and in the case before the court he did this when he made the accounts a part of his will. If the legatees did not choose to accept or be bound by the terms of the will, it was open to them to contest it but claiming under the will they were bound by its provisions.

In re Aird's Estate, also cited Aird v. Quick, 12 Ch. Div. (1879) 291, it was held that where a testator by his will gave a legacy and by a codicil, after reciting that he had advanced to the legatee a certain sum, directed that sum to be considered as a payment on account of the legacy, it was held that the sum mentioned would be deducted from the legacy, though the advance in fact made was less than that sum. In deciding the case,

Sir Edward FRY, Justice, said that it appearing in fact that the sum named by the testator as having been advanced to the heir, had not in fact been advanced by the testator at the date of the codicil by which it was charged, and that the recital that that sum had been advanced was therefore erroneous, the question then arises, said the justice, as to whether the legatee is bound by that recital and whether the sum named or so much as should not have been repaid, shall be deemed to have been advanced on account of his share. "In my judgment," says the justice, "he is so bound. If he had been able to show a repayment of any sums subsequently to the date of the codicil, of course that defense would have been admissible, but it is not contended that there has been any actual repayment of any of the advance made. It appears to me that in that codicil I have a direction that four thousand pounds or so much of four thousand pounds as is not repaid should be taken in reduction of the share. If the testator was in error in the view in which he was proceeding, it appears to me that the error is binding on those who benefit under his will." This decision has been criticised and is said to have been overruled In re Taylor's Estate, also cited as Tomlin v. Underhay, 22 Ch. Div. L. R. (1883) 495. It is true that in the case In re Taylor's Estate, the case In re Aird's Estate is not followed but it is not overruled, and examination of the two cases discloses a different state of facts, and different provisions in the will in the one case than in the other.

In the case of In re Kelsey, 74 L. J. (1905) Ch. Div. 701, Mr. Justice EADY, passing on the Taylor case and the Aird case, both of which were called to his attention, notes this difference, for he says: "I think that the cases dealing with the question raised resolved themselves into two classes—namely, one where the testator by apt words directs a legatee to bring into account a particular sum; he may recite—perhaps erroneously—that a particular sum has been advanced and direct a legatee to

bring into account the sum 'hereinbefore recited to have been advanced,' or he may by other appropriate language show an intention that the legatee shall absolutely and in any event bring into account the sum mentioned in the other part of his will. In other words, the testator directs that the legatee shall only take upon the footing that he brings a particular sum into account, and then shall only receive the balance that would be payable to him on that footing. In the other class of cases, the testator recites the debt owing from the legatees—again he may recite it erroneously—and then directs that the debt, or so much as shall remain unpaid at the time of the testator's death, shall be deducted and brought into account. In the second class of cases the testator really intends that there shall be brought into account the debt or balance thereof which is actually owing at the time of the testator's death." He holds that the case presented In re Taylor's Estate falls under the second class above mentioned, whereas the case in judgment in In re Aird's Estate falls under the first, and he cites, in confirmation of the distinction between the two cases and that the decisions in each of them can stand, the opinion of Mr. Justice NORTH in the later case of Wood, In re, 55 L. J. Ch. 720, s. c. 32 Ch. D. 517.

The Supreme Court of Ohio in Younce v. Flory, 77 Ohio St. 71, speaking of a suit somewhat similar in character to the present proceeding and in which it was endeavored, in considering advances, to establish them without regard to the provisions of the will, says, in substance, "the effort of the respondents is for the reformation of the will because of an alleged mistake affecting the provisions in the will charging respondents with advances according to the advance book kept by the decedent. By the clear terms of the will the amount of these advances is distinctly set out as the amount to be charged to his several children on their shares in the estate and to change the amount from that designated

in the will into another one is, in effect, to overturn or set aside the will itself which it is unnecessary to say cannot be done in a proceeding such as this.    The will has been duly probated and must be executed exactly in accordance with its terms, and this provision as to advancements is no more entitled to correction than any other clause in the will itself, for it is a well-settled principle that equity cannot reform a will."

Redfield on the Law of Wills (2 Ed.), vol. 3, top of page 49, says: "The question of the power of courts of equity to reform wills came under consideration in the case of Box v. Barrett, where the testator distributed his property unequally among his daughters, upon the declared ground of equalizing their portions, reciting that two of them would become entitled to settled estates, upon the testator's decease, when, in fact, they were all equally entitled under the settlement.    Lord Romilly held that no case of election arose, because the will did not profess to affect the settled estates, and, upon the question of reforming the instrument, said: 'Because the testator has made a mistake, you cannot afterwards remodel the will, and make it that which you suppose he intended, and as he would have drawn it, if he had known the incorrectness of his supposition.'    It is no sufficient ground to refuse the probate of the will that error in matter of fact has been committed by the testator, unless it be of a character to defeat his testamentary intentions."

In Vitt v. Clark, 66 Mo. App. 214, this court has laid down as an elementary proposition that a testator's will speaks as of the date of his decease.    If between the date of the will and the date of the decease conditions have changed, it must be presumed that these changes were in the testator's mind when he died and in view of the fact that he made no changes in the will, the meaning of the terms used therein must be interpreted in the light of conditions existing at the later date.

Whether the amount appearing on the books of advancements and charges of this testator was correct or not, we consider that the rules which shall govern in this case are those which apply where the testator had made a definite disposition of his estate, charging his children with definite amounts, as by way of advancements. In effect it is to say, even if these amounts are not the correct amounts actually advanced, that in the disposition of his estate, this daughter and her husband are to be held to have had that much advanced to them. It was within the power of the testator to do that. If it is incorrect in amount, the court has no power to correct it, and treat the will as in force. The amount of the advances to these two respondents, his daughter and her husband, while not stated in the will, is stated so completely and definitely and with such certainty by reference to this account, or "book of advancements," that it is easy to make it certain and that amount with which the testator has charged respondents is $4570.56, and he directs his estate to be distributed on the theory or assumed fact that these respondents should be charged with that amount, and that, the named advances to other children being brought in, the estate be divided equally between all of his children. If this one account is to be opened up and the book of advancements discredited as to respondents, why not also as to all the other children? To do this as to any one or as to all, does away with the provisions made by the will itself and practically causes the testator to become intestate. In the view that we take of the case we do not think that parol evidence was admissible—any evidence for that matter, to show mistake in the amount as set out in the book of advancements, there being no sufficient evidence of payments of later date than the dates in the book of account, any more than evidence would be admissible to show a mistake in any other portion of the will itself. We have been invited by counsel to read the whole record and have done so. From that reading, we can come to

no other conclusion than that the testimony offered and admitted to surcharge the account of advancements, as that account is made out by the testator himself, evidently a very careful, intelligent and competent man, wholly fails to do so. We cannot say that it even tends to do that. As we understand, the final settlement of the executor is drawn up in entire accord and with the provisions of the will, and should be approved.

The order of the probate court and the judgment of the circuit court in sustaining the objections to the final settlement of the executor were erroneous and this case is reversed and remanded with directions to the Honorable Circuit Court of Ralls County to enter up judgment overruling the objections to the final settlement and approving it. All concur.