GUSTAV HANSSEN, JR., AND AUGUSTA HANSSEN, HIS WIFE (PLAINTIFF), APPELLANT, v. OTTO F. KARBE, TRUSTEE, ST. LOUIS UNION TRUST COMPANY, TRUSTEE, UNDER THE LAST WILL AND TESTAMENT OF GUSTAV HANSSEN, SR., DECEASED, EMELIE HANSSEN, MARY HANSSEN DOERR, AND LILLIAN HANSSEN JAMES (DEFENDANTS), RESPONDENTS.—115 S. W. 2d) 109.

St. Louis Court of Appeals. Opinion filed April 5, 1938.

Motion for Rehearing Overruled April 20, 1938.

Writ of Certiorari Denied May 21, 1938.

*Harry A. Frank* and *Foster H. Brown* for appellants.

*Bryan, Williams, Cave & McPheeters.* for respondent, St. Louis Union Trust Company.

666

HOSTETTER, P. J.—This is a suit in equity which was begun in the Circuit Court of the City of St. Louis on March 5, 1935, by Gustav Hanssen, Jr., and Augusta Hanssen, his wife, against Otto F. Karbe, trustee in a certain deed of trust covering the home property of plaintiffs, and the St. Louis Union Trust Company, trustee under the last will and testament of Gustav Hanssen, Sr., and the latter's widow, Emelie Hanssen, and his two surviving daughters, Mary Hanssen Doerr and Lillian Hanssen James.

The plaintiff, Gustav Hanssen, Jr., was a son of the testator, and he and his mother (the widow) and his two sisters, the daughters of the testator, constituted all the survivors who were the beneficiaries under the will.

The relief sought by the petition was, first, to enjoin the foreclosure of the deed of trust on the house and lot in the city of St. Louis, owned and occupied by the plaintiffs, and, second, to obtain a construction of the will of Gustav Hanssen, Sr., and, third, the removal of the St. Louis Union Trust Company as Trustee under the will for alleged improper acts in connection with the management of the estate.

The will was executed in due form on November 17, 1924. The testator died on July 16, 1930, and the will was thereupon duly probated in the Probate Court of the City of St. Louis.

The first three paragraphs of the will are non-essential to the issues in this case, providing for payments of debts, certain small specific bequests of money, and of household furniture and personal effects to the widow, and, for the sake of brevity they are omitted together with the signatures and attestation clause, and the remainder of the will reads as follows:

"Fourth: All of the rest, residue and remainder of my property, both real and personal, and of every kind and description, whereever the same may be situated, I give, bequeath and devise unto the St. Louis Union Trust Company, a corporation, of the City of St. Louis, Missouri, to have and to hold the same as trustee, upon the terms and conditions, for the uses and purposes, and with the powers and duties following, that is to say:

"Said Trustee shall receive, hold and manage said property, and shall invest the same in such stocks, bonds and other property, real or personal, as the Trustee may deem safe and desirable, shall make reinvestments and changes of investment thereof from time to time, and shall collect the income therefrom, with full power in the Trustee to sell, exchange, lease, pledge, mortgage or otherwise dispose of all or any portion of the trust estate, in such manner and upon such terms as the Trustee may deem most beneficial to the trust estate. The Trustee shall have full power to determine whether any money or other property coming into its hands shall be considered as a part of the principal or the income of the trust estate, and to apportion between such principal and income any loss or expenditure in connection with the trust estate, as to it may seem just and equitable. The Trustee shall have further power to continue to hold any stocks, securities or other property which it may receive hereunder so long as it may consider the same desirable investment, regardless of whether such stocks, securities or other property are in law proper investments for trust funds. The Trustee may invest any part of the trust funds in property located outside of the State of Missouri, or in the obligations of non-residents of said State.

"After paying the necessary charges and expenses incurred in the management and investment of the trust estate, including the reasonable compensation of the Trustee for its own services, the Trustees shall pay over one-half (1/2) of the entire net income derived therefrom, in monthly or other convenient installments, to my said wife, Emelie Hanssen, so long as she shall live, and one-sixth (1/6) of the entire net income derived therefrom, in monthly or other convenient installments to my son, Gustav Hanssen, Jr., and one-sixth (1/6) of the entire net income derived therefrom, in monthly or other convenient installments to my daughter, Mary Hanssen Doerr, and one-sixth (1/6) of the entire net income derived therefrom, in monthly or other convenient installments to my daughter, Lillian Hanssen James.

"If at any time during the lifetime of my said wife she should be in need of funds in excess of the net income from the trust estate in order to provide for her reasonable care and comfort, or because of the illness, infirmity, or any other emergency affecting her, then I authorize the Trustee, in its sole discretion, to encroach upon the principal of the trust estate from time to time for such purposes, and in such amounts as it may deem necessary and proper.

"If my said wife should remarry after my death, then at the time of her remarriage this trust shall cease, and the Trustee shall pay over and distribute the property then constituting the trust estate, both principal and accumulated income, free from trust, as follows:

"A one-fourth (1/4) part thereof to my said wife, Emelie Hanssen, and

"A one-fourth (1/4) part thereof to each of my three children, namely, Gustav Hanssen, Jr., Mary Hanssen Doerr and Lillian Hanssen James, or if any of my said children should not then be living, the share of such deceased child shall go to his or her descendant then living, per stirpes, or if no descendant of such deceased child is then living, his or her share shall go, in equal parts, to the others of my said children or to their respective descendants then living, per stirpes, if any of them are dead.

"In the event my said wife does not remarry after my death, then this trust shall cease at the time of her death, and the Trustee shall pay over and distribute the property then constituting the trust estate, both principal and accumulated income, free from trust and in equal shares, to my said three children, or to their respective descendants then living, per stirpes, if any of them are dead, or if any of my said children should have died without leaving any child or other descendant of him or her living at the time of the termination of the trust, then the share of such deceased child shall go, in equal parts, to the others of my said children, or to their respective descendants then living, per stirpes, if any of them are dead.

"In the event that any of my children should depart this life prior to the termination of the trust estate herein established, then in that event the income heretofore paid to the one so dying, shall go to his or her descendants then living, per stirpes, or if no descendant of such deceased child is then living, his or her share shall go in equal parts to the others of my said children or to their respective descendants then living, per stirpes, if any of them are dead.

"Neither the principal nor the income of the trust estate shall be liable for the debts of any beneficiary hereunder, nor shall the same be subject to seizure by any creditor of any beneficiary hereunder, or under any writ or proceeding at law or in equity, and no beneficiary hereunder shall have the power to sell, assign, transfer, encumber or in any other manner to anticipate or dispose of his or her interest in the trust estate or the income produced thereby.

"Fifth: The provisions in this will made for my said wife are in lieu of homestead, dower, rights of election, statutory allowances in lieu of provisions, and all other statutory or common law marital rights which she may have in and to my estate, and the same shall be free from the interest or control of any other husband she may hereafter have; and in the event my said wife should elect to renounce this will and take such share of my estate as is allowed to her by law, then from and after the time of such election all rights of my said wife in and to the trust estate created by this will shall at once cease, and the Trustee shall thereafter hold, manage and distribute the trust estate, both as to income and principal, in all respects as is in this will provided in the case of the death of my said wife.

"Sixth: I direct my Executor to pay all estate and inheritance taxes assessed against my estate, or against any gift or bequest made in this will, out of the general assets of my estate, and such taxes shall not be charged against or deducted from any such gift or bequest.

"Seventh: I have heretofore made loans to some of my children, and may hereafter make other loans to them. It it my wish, and I so direct, that any money owing to me at the time of my death be any of my children, either upon notes, open accounts or otherwise, shall be charged, both as to principal and interest accruing thereon, as advancements made to my children out of their respective shares in and to my estate, and the same shall be deducted from such shares at the time of the distribution thereof to my said children, as is hereinbefore in this will set out.

"Eighth: I hereby nominate and appoint said St. Louis Union Trust Company, Executor of this my last will and testament, and I hereby declare that at or before the execution of this will I received advice and counsel in relation thereto from someone not under salary from said St. Louis Union Trust Company."

The petition reads as follows:

"Comes now plaintiff and states that the St. Louis Union Trust Company is a corporation duly organized and existing according to law, and for cause of action states that Gustav Hanssen, Sr., departed this life on or about July 16, 1930, leaving a last will and testament, which was duly filed and probated in the Probate Court of the City of St. Louis, Missouri, as Estate No. 71,822, and in which said estate a final settlement was filed and approved and the executor thereof discharged on or about April 18, 1932.

"Plaintiff further states that the plaintiff, Gustav Hanssen, Jr., was the son of the said testator, Gustav Hanssen, Sr., who, at his death, left surviving him, in addition to said plaintiff, his widow, Mrs. Emelie Hanssen, and two daughters, Mary Hanssen Doerr and Lillian Hanssen James; that in accordance with the last will and testament

of the aforesaid testator, after making certain specific bequests, all the remainder and residue of his property was bequeathed to the St. Louis Union Trust Company in trust, and which trustee was directed to pay the net income as follows: One-half to the widow, Emelie Hanssen; one-sixth thereof to each of said three children, to-wit: the plaintiff, Gustav Hanssen, Jr., and the defendants, Mary Hanssen Doerr and Lillian Hanssen James; that in the event the said widow should remarry after the testator's death, then the said trust was to determine and the estate be divided one-fourth in equal shares to said widow and said three children; that upon the death of said wife, Emelie Hanssen, said trust estate was to terminate and be divided one-third in equal shares to each of the said three children, the plaintiff, Gustav Hanssen, Jr., and the two daughters, Mary Hanssen Doerr and Lillian Hanssen James.

"Plaintiff further states that the inventory filed by the executor in said estate in said Probate Court at the time of said testator's death recited that said testator owned certain real estate consisting of premises No. 2914-16-18 South Jefferson Avenue in the City of St. Louis, Missouri, assessed at $15,250 and also a ten-acre farm located in Zavala County, in the State of Texas, and in addition thereto certain personal property consisting of notes, stocks, bonds and cash, inventoried at approximately $9500; that during the administration of said estate, all of said personal property was sold, and at the time of the final settlement the only personal property remaining in said estate was one note signed by the plaintiff, Gustav Hanssen, Jr., and Augusta Hanssen, his wife, dated November 1, 1924, payable to the order of the testator and due in sixty months after date and in the principal sum of $7330; that the plaintiff, Augusta Hanssen, executed said principal note and the interest notes hereinafter described jointly with her husband, but received none of the funds advanced; that on maturity on November 1, 1929, said principal note was extended to mature November 1, 1934, and in addition thereto there were certain two series of ten semi-annual six per cent interest notes on said principal obligation, one series of interest notes dated November 1, 1924, and the other on November 1, 1929, and which notes were secured by a deed of trust executed by the plaintiffs dated November 1, 1924, and recorded in book 4245, at page 211, of the Recorder of Deeds' office of the City of St. Louis, Missouri, conveying to Otto F. Karbe, trustee, certain real property situated in the City of St. Louis, Missouri, to-wit:

"Lot 12 in Block 3 of Lynna Subdivision, a subdivision in U. S. Survey 3217, plat recorded in surveyor's record 9, page 101, and in City Block 5766 of the City of St. Louis, Missouri, fronting 30 feet on the south line of Schollmeyer Avenue, a private street 50 feet wide, by a depth southwardly between parallel lines of 120 feet to a private alley 15 feet wide, together with improvements thereon

known and numbered as 5210 Schollmeyer Avenue, St. Louis, Missouri.

"Plaintiff further states that at the time the aforesaid principal note, interest notes and deed of trust were executed by the plaintiffs on or about November 1, 1924, the said plaintiffs and their three children were and had been in a distressed financial condition and said testator, the father of the plaintiff, Gustav Hanssen, Jr., in order that his son and his family would have a house and home to live in, built a dwelling house on the above-described premises, known and numbered as 5210 Schollmeyer Avenue, and deeded or caused to be deeded or turned over, said real property to said plaintiffs herein for the sum of $7330 so advanced and paid by said testator in connection with the building of said home; that at said time the testator advised plaintiffs he desired that they execute a principal note for said $7330 secured by the deed of trust aforesaid, in order to keep the other members of his family from complaining, and that if during the testator's lifetime the plaintiffs, when their financial condition became better, could pay either interest or account of principal thereon, they should do so, but if no payment was made by them prior to his death, said principal and interest notes, deed of trust and the money so advanced by said father to his son would be considered as an advancement of his share in the father's estate.

"Plaintiff further states that in accordance with said testator's will duly probated as aforesaid and dated November 17, 1924, said testator provided in clause 7 there as follows:

"Seventh: I have heretofore made loans to some of my children, and may hereafter make other loans to them. It is my wish, and I so direct, that any money owing to me at the time of my death by any of my children, either upon notes, open accounts or otherwise, shall be charged, both as to principal and interest accruing thereon, as advancements made to my said children out of their respective shares in and to my estate, and the same shall be deducted from such shares at the time of the distribution thereof to my said children, as is hereinbefore in this will set out.

"Plaintiff further states that in accordance with the acts and statements of the testator, and in accordance with the aforesaid provision contained in his said last will and testament, the said testator intended that the said principal note for $7330, secured by the first deed of trust aforesaid on the premises 5210 Schollmeyer avenue, St. Louis, Missouri, as well as the series of interest notes on said sum, then constituted an advancement by said father to his son of his interest in the father's estate and at the date of the death of said testator and the probation of his will on or about July 16, 1930, and thereafter, said note and obligation did not and should not bear, or was not entitled to bear, interest or any other charges and should have been canceled or at least held in abeyance until the final distribution of said estate.

"Plaintiff further states that, disregarding the provisions contained in said will, said St. Louis Union Trust Company, as trustee, compelled the said plaintiffs to pay interest on the aforesaid mortgage notes, required said plaintiff to pay on December 3, 1931, the sum of $100 and on January 27, 1932, an additional sum of $100, and said trustee has further applied whatever income that has been or may be due to said plaintiff, Gustav Hanssen, Jr., on account of interest and charges against said principal mortgage note; that said trustee has demanded that the plaintiffs herein pay the aforesaid principal mortgage note for $7330 and the interest notes thereon and has now caused the defendant, Otto F. Karbe, trustee in said deed of trust, to advertise notice of foreclosure in the St. Louis Daily Record to the effect that said Otto F. Karbe, as trustee under said deed of trust, at the request of the St. Louis Union Trust Company, trustee, will on Tuesday, March 12, 1935, at the east front door of the Civil Courts Building, Eleventh and Market Streets in the City of St. Louis, Missouri, sell at public vendue to the highest bidder for cash the said real estate described in said deed of trust and heretofore described in this petition.

"Plaintiffs further state that they have requested said defendants Karbe, trustee, and the St. Louis Union Trust Company to withdraw and cease said advertisement of the foreclosure sale and to withdraw and desist in said sale, advising said defendants that they have no power or authority to persist in the collection of said principal and interest notes or to sell the real estate as security therefor or to apply the proceeds of the sale in satisfaction of said indebtedness, but said defendants, disregarding plaintiffs' notice and request, insist upon continuing said advertisement of sale and threaten to sell and will sell said real property unless enjoined by this court, and the same will cause the plaintiffs to suffer irreparable loss and injury. The plaintiffs have no adequate remedy at law.

"Wherefore, the plaintiffs pray for a writ of injunction restraining and enjoining the said Otto F. Karbe, trustee, and the St. Louis Union Trust Company, as trustee under the last will of Gustav Hanssen, Sr., from advertising the sale of said real property at foreclosure sale and of selling or attempting to sell said real property at public auction on March 12, 1935, or at any other day for the purpose of satisfying the aforesaid indebtedness consisting of the aforesaid principal note of $7330 and certain accrued interest notes thereon; that an order to show cause be issued by this court requiring the defendants to show cause why they should not be restrained and enjoined from selling or attempting to sell the real property now owned by the plaintiffs herein and situated in the City of St. Louis, Missouri, as follows: (Same description as hereinbefore set out.); that this court make and enter its order and degree construing the said last will and testament of said Gustav Hanssen, Sr., especially the

seventh clause thereof, and give directions to the said trustee and to the beneficiaries herein, that the aforesaid principal note of $7330 and the accrued interest notes thereon constitute and evidence an advancement to the plaintiff, Gustav Hanssen, Jr., of his share in his father's estate and that said defendant cease and desist in demanding payment thereof or in attempting to collect any part of said principal or interest notes and for such other directions as may be necessary for the proper distribution of said estate, and if the court finds that said trustee has acted improperly in connection with this trust estate that the court remove the St. Louis Union Trust Company as trustee of said estate and for such further orders and decrees that the court may seem proper and just and equitable in the premises.''

Otto Karbe's pleading to the order to show cause, contained an admission that he was the named trustee in the deed of trust and had no interest in the matter except to perform his duties, and prayed the further order of the court.

The answer of the St. Louis Union Trust Company is as follows:

''Now comes the defendant St. Louis Union Trust Company and for its answer to the petition of the plaintiff denies each and every allegation therein contained.

''This defendant admits that it is a corporation and admits that by the last will and testament of Gustav Hanssen, Sr., it was named as executor of said will and as trustee of an estate created by said will.

''This defendant states that with the exception of bequests amounting to $300 to charitable institutions and excepting a bequest of the testator's household furniture, books, pictures, silverware, clothing and jewelry, the entire estate of the testator was given, bequeathed and devised to the St. Louis Union Trust Company, as trustee, for the primary purpose of providing for the support and maintenance of his wife during her widowhood, and for the secondary purpose of providing an income for the three children of the testator, who are, namely, Gustav Hanssen, Jr., Mary Hanssen Doerr and Lillian Hanssen James; that by the fourth clause of said will this defendant, as trustee of said trust estate, was directed to pay to the wife of the testator one-half of the net income of said trust estate, and in the event that one-half of the net income of said estate should not be sufficient to provide for the reasonable care and comfort of the testator's wife the trustee was directed to use so much of the principal of said trust estate as might be necessary to provide for her reasonable care and comfort.

''This defendant states that the testator directed in his said will the trustee, upon the termination of the trust estate by the remarriage of his widow, to deliver and distribute to her one-fourth of the trust estate and to distribute to each of his three said children the remainder thereof in equal parts, and also directed the trustee, upon

the termination of the trust estate at the death of his widow without her having remarried, to deliver and distribute to his said three children the said trust estate in equal parts. A copy of said will is hereto attached, marked 'Exhibit A,' and made a part hereof.

"That although by the seventh clause of his will the testator directed that any money owing to him at the time of his death by any of his children should be charged, both as to principal and interest, as advancements to them and that the same should be deducted from the shares of such children at the time of the distribution of the share to them, the testator did not intend that any one of his children should receive more of his estate than the other two children, but that he intended that each of them should receive an equal share of his estate.

"This defendant states that the assets in said estate consist of Lots Nos. 2914, 2916 and 2918, South Jefferson Avenue in the City of St. Louis, a ten-acre farm located in Zavala County, Texas, the notes and deed of trust signed by the plaintiffs and other personal property of the value of about $900; that the market value of all of said assets does not exceed $20,000, and that if the said trust estate should terminate at this time the daughters of the testator would receive several thousand dollars less than the amount of the notes signed by the plaintiffs and the interest thereon.

"This defendant further states that if the said notes and deed of trust shall be held to be not a part of the trust estate it will be necessary for this defendant, as trustee, to sell the real estate situated in St. Louis, Missouri, or a part thereof, for the support and maintenance of the widow of the testator, and in that event the two daughters of the testator will receive at the final distribution of the estate considerably less than if there should be a distribution of the estate at this time, and in the event the testator's widow should live long enough the entire amount of the real estate would be consumed in her support and maintenance and the testator's two said daughters would receive nothing from the estate while the plaintiff, Gustav Hanssen, Jr., would have received what now amounts to in excess of $11,000.

"This defendant further states that as executor of the will of Gustav Hanssen, Sr., it inventoried the said notes and deed of trust signed by the plaintiffs as part of the estate of Gustav Hanssen, Sr., had them appraised as a part of said estate and filed said inventory and appraisement at the beginning of its administration of said estate in the year 1930. The said estate was in the process of administration until on or about April 18, 1932, and during all of that time, although the plaintiffs knew that they had delivered the said notes and deed of trust to Gustav Hanssen, Sr., in his lifetime, knew that he had not returned to them the said notes nor canceled them, knew of the death of the testator in July, 1930, and knew that the testator

had named this defendant executor of his will and had provided in his will that all debts of any of his children were to bear interest, they did not at any time object or except to this defendant as executor of the testator's will, taking possession of said notes and deed of trust and did not object or except to the inventorying and appraising of the notes and deed of trust as a part of the estate of Gustav Hanssen, Sr. During the administration of said estate in the Probate Court the plaintiffs knew that this defendant was in possession of the said notes as executor of said will and knew that it claimed the ownership and title thereof as such executor, and the plaintiffs at no time in any manner questioned the ownership of them or at any time denied that they were a part of the assets of the estate of Gustav Hanssen, Sr. During said time there had accrued some income on the assets of said estate due to the plaintiff Gustav Hanssen, Jr. On or about December 3, 1931, this defendant, as executor, credited on the notes of the plaintiff the sum of $100 from that part of said income which was due to the plaintiff Gustav Hanssen, Jr., and on January 27, 1932, it made a credit on said notes of $100 from the income due to the plaintiff Gustav Hanssen, Jr. Plaintiffs knew of these credits, and the only objections which they or either of them made to the action of this defendant in applying the said amounts from the income to the said notes was that it was a hardship upon the plaintiffs in view of their financial circumstances.

"This defendant, as executor of the will of Gustav Hanssen, Sr., published in the early part of the year 1932 notice of its intention to make a final settlement of said estate in the manner prescribed by law. A final settlement and accounting was had and on or about April 18, 1932, the Probate Court of the City of St. Louis, Missouri, ordered, under the will of the testator as interpreted by said court, this defendant as executor of said will to deliver and to distribute to itself, as trustee under said will, the said notes and deed of trust signed by the plaintiffs. The plaintiffs did not object or except to the said order of distribution and the final settlement of this defendant as said executor. They did not appeal from the aforesaid order of distribution.

"And so this defendant states that the plaintiffs have with full knowledge of all the facts for a period now of approximately five years by their aforesaid affirmative and negative acts and conduct acquiesced in the ownership of said notes and deed of trust by this defendant, as executor and as trustee, and have affirmed and ratified the ownership of said notes and deed of trust by this defendant, as executor and as trustee under the said will, and for the purposes mentioned in said will, and that the plaintiffs are now barred and estopped by their acquiescence and affirmance and by their laches from now asserting that the said notes and deed of trust are not now a part of said trust estate.

"This defendant denies that it acted improperly in taking possession of said notes and deed of trust, in asserting ownership of them as executor of said will and as trustee of said trust estate and in requesting the trustee in the deed of trust to advertise and sell the property described in the deed of trust. This defendant states that it has acted at all times in good faith in doing all the things aforesaid, in accordance with its own interpretation of the will of the testator and in accordance with the interpretation of said will by the Probate Court of the City of St. Louis, Missouri, which said interpretations were acquiesced in, confirmed and ratified by the plaintiffs, with full knowledge of all the facts, and that it should not, therefore, be removed as trustee of said trust estate.

"Wherefore, having fully answered, this defendant prays to be discharged with its costs in this behalf expended."

Plaintiff's reply to the answer of the St. Louis Union Trust Company was a general denial.

The remaining defendants, the widow and the two daughters, although appearing in court, filed no pleadings.

On the trial of the cause on March 13, 1935, the court took the case under advisement and, on April 1, 1935, found the issues against the plaintiffs and rendered a judgment dismissing their petition and, after an ineffective motion for a new trial, plaintiffs duly perfected their appeal to the Supreme Court and that court transmitted the cause to this court for a determination of the matters involved in this appeal. [See 106 S. W. (2d) 415.]

The plaintiff, Gustav Hanssen, Jr., was fifty-two years old at the time of the trial, and his principal business in life had been that of swimming instructor and a gymnastic school manager. He was unfamiliar with court procedure and legal terms, and, as he said, relied on the Trust Company to carry out the terms of his father's will. He had no counsel until just before the institution of this suit. He had an eighth grade and business college schooling and understands the meaning of the English language pretty well.

There was testimony to the effect that in 1924 a conference was held at the home of his wife's parents, which was attended by the members of that family, and the two Hanssens, father and son, at which time his sad financial condition was discussed and it was stated to the father that his son had been out of work for many months and had no money to pay rent; that meals were often taken at the home of the wife's parents and that his son's wife and three children could not longer live that way and that something had to be done, and that Mr. Hanssen, Sr., said, "Yes, I got to do something because my boy stood alongside of me since he is eight years old; I always need him in business, and he worked for me steady a long time, since he was eight years old, he helped me, he come home from school and the other boys run out to play and he stayed in and

helped me to get ready for the morning. I have got to do something; I am going to build a house for him so he has a roof over his head.''

The testimony further showed that the lot was then purchased and the house built by the father, the total cost of both building and ground being $7330, the title being put in both plaintiffs and a note for that amount being given by both plaintiffs to the father secured by the deed of trust on the property in controversy in this suit. Certain interest notes were given along with the $7330 principal note, all of which were dated November 1, 1924, and an extension of the notes was made thereafter. It was shown that the son had made small payments amounting to $50 only up to the time of the father's death.

It was also shown in evidence that at the time these notes, principal and interest, were requested by the father to be executed by the son and his wife, the son inquired as to why notes were necessary, and the father replied that he would rather have it that way; that ''then the girls would not have any kick coming and that is part of your share anyway.''

It is also shown that the Trust Company mailed a series of letters containing copies of the inventory, settlements and other papers and duns for the payment of the $7330 note and interest notes, with the idea apparently to create an estoppel as against the plaintiff. It also appeared in testimony that the Trust Company applied two $100 credits on the plaintiff's notes on its own volition, being plaintiff's part of some income coming to the beneficiaries during the progress of the administration, of which it also advised said plaintiff. The plaintiff, however, denied receiving any such notice. He did, along with his sisters, sign a paper authorizing the executor to use certain income from the estate for the support of the mother.

Plaintiff, Gustav Hanssen, Jr., testified, *inter alia*, as follows: ''I had an agreement with my father that he was to build a house which would be given to me as payment for things that I had done years before. I do not recall exactly what Mr. Hinton (Assistant Trust officer) said. He did not say anything about that I would have to pay interest on this. He said I would not be pressed for the payment. He did say that if I got any income out of this estate he would apply it on my interest. Well, I did not make any reply entirely at that time. I didn't understand it fully. I never had any other conversation with Mr. Hinton and I never received any notice that these one hundred dollars were applied on the notes in December, 1931, and January. . . . The next conversation I had with the officers of the trust company was last November and I had no discussions with the trust company other than what I had stated, about two or three times, up to 1934. I had nothing to do with the estate before. The last time I saw Mr. Ham at the office of the trust company it was a general conference between my sisters, my

mother and myself. We tried to make some adjustment. Mr. Doerr, my brother-in-law, was there; they wanted that I should pay them $1500 for the property, as a down payment, and I said, 'Well, my goodness;' I thought he was silly bringing up a question like that. 'I am not buying the house from you, that property was given to me by my father with the understanding that it was to be payment for things.' Mr. Ham did not say anything. He was just listening in. Shortly after that we had a discussion with Mr. Frazier. It was along the same lines and Mr. Frazier made a proposition of cutting down the interest and having that interest set aside; that a good value for the property at that time would be $4500, and that we should pay, if agreeable to the girls, we should start that payment as soon as possible, and I said if the girls would agree to it about February 1st we would start the payments. I told him at the time about this property being given to me by my father. I made that statement to Mr. Frazier. The first time my wife was there with me. The second time she went along. That is all the conversation I had until I went down with you (Mr. Franke). I had no counsel or lawyer during all of this time. The trust company, when they took over the estate, took all the papers, everything. Of course, they were mentioned as executors of the will, so I thought it was in good hands and paid no further attention to it.''

Mr. Frazier (the Trust Company officer) testified that the plaintiffs in their conferences with him did not say anything about this gift, or that they didn't really owe anything, but he qualified this statement by using the following language: ''There may have been a statement on their part tending in that direction.''

The contention of the defendant, St. Louis Union Trust Company, is that the seventh clause of the will should not be held to create an advancement in the technical sense of that word; and that other portions of the will required equality between the son and the two daughters and that if the advancement be recognized it would result in the son's share exceeding the shares of his sisters. Another contention is that even if said seventh clause does create an advancement, the son has lost the benefit of it by the judgment of the probate court and by his acquiescence and laches.

The record does not disclose the identity of the scrivener who prepared the will, nor does it disclose whether he was on the salaried staff of the Trust Company or not, but it is obvious that he took pains to give the Trust Company a ''clean bill of health'' by having the testator declare in the closing clause that prior to the execution of the will, he had ''received advice and counsel in relation thereto from some one not under salary from said St. Louis Union Trust Company.'' But, regardless of the identity of the scrivener, the will itself bears internal evidence that it was prepared by one of legal training and ability, and one who was gifted in the work which

he essayed to perform, and, consequently that he knew the technical meaning of words employed, •of which the layman would likely be ignorant. Therefore, it seems certain that in using the word "advancement," in the seventh clause of the will, he used it advisedly and with its technical meaning in order to put into effect the express wishes of the layman testator, which, of course, it was his duty to do.

If we gave the seventh clause any other meaning, than the plain English language contained therein would indicate, we would be distorting the usual meaning of words and thwarting the wishes of the testator. We find no ambiguity in this seventh clause. But, it is contended by counsel for the Trust Company that if we ascribe this meaning to it, that it will destroy the other part of the will, which seems to reflect the testator's desire that there should be equality among the beneficiaries. We deem it a very unwise and dangerous precedent to establish, that an executor-trustee may; at its "own sweet will" choose which clause of a will it will nullify or strike down. The will under consideration is the will of the testator, not the will of the person, natural or corporate, who may be appointed to carry it out.

Section 17, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 17, p. 18), which prescribes the form of oath for executors to take, sets out *inter alia* "that he will make a perfect inventory of the estate *and faithfully execute the last will of the testator.*" (Italics ours.) Section 37, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 37, p. 25), prescribing the form of letters testamentary, contains similar admonitions.

The strained and studied effort of the executor-trustee to ignore, strike down and nullify the seventh clause of the will on the ground that to give it effect would destroy equality among the legatees is well answered by the Pennsylvania Supreme Court in Snider v. Snider, 149 Pa. 362. In that case the will of John Snider was under consideration. It contained a provision to the effect that all notes and other evidences of debt which might be held by the testator against any of his children should be treated by his executors "as advancements and deducted from the shares of the respective beneficiaries" under his will. John Snider, Jr., a son and namesake of his father, the testator, owed him a note for $2000 on which the executors brought suit. The court, in deciding against the executors, used this language:

"The clause of the will above quoted is as clear as language can make it, that the note in question is to be treated by the executors as an advancement. While a testator may not turn an advancement into a debt, it is well settled that he may turn a debt into an advancement. It was contended, however, that to so treat it would produce inequality, and that there was no share coming to John Snider, Jr., from which this advancement could be deducted. All this is outside of the case stated. If inequality is the result, it is neither the fault of the court below nor of this court, but the re-

sponsibility therefor must rest with the testator himself. Aside from this, we cannot know that he did not intend to create this very inequality."

In Knight's Estate, 253 Pa. 290, the testator had two sons, each of whom owed him money evidenced by notes given by each of them respectively. The will of the father contained this clause:

"Whatever debt may be owing to me at the time of my decease by my said sons, or either of them shall be taken into account and deducted from their share of my estate."

It will be noted that the will did not contain the technical word "advancement." It was held in that opinion that notwithstanding this omission, the debts of the two sons were properly treated as advancements, under the terms of the will.

In Lynch v. Culver, 260 Mo. 495, l. c. 498, the court made the following observation:

"A parent may make either an absolute gift to a son because he is a good boy and stays at home, or he can make him a gift by way of an advancement for the same reason. The law presumes that it was an advancement when the contrary is not shown."

Our Missouri statutes requiring advancements to be brought into hotchpot so there may be equality among heirs apply only to estates of intestates and has no application where there is a will containing a direction to the executor or trustee to treat a debt as an advancement in such plain, certain and unambiguous terms as appear in the instant case. [Secs. 311, 312 and 526, R. S. Mo., 1929 (Mo. Stat. Ann., secs. 311, 312, p. 198, and sec. 526, p. 321); In re Lear's Estate, 146 Mo. App. 642, 124 S. W. 592; Ray v. Loper, 65 Mo. 470; Wickliffe v. Wickliffe, 206 Mo. App. 42, 226 S. W. 1035, l. c. 1037.]

The express wish of the testator in the instant case may not be ignored by the executor-trustee with impunity. In fact, we think an advancement set out in the will is a much preferable way to create advancements than by those methods usually applicable to intestates. In the latter class the circumstances under which the parent bestows a gift on a child is to be analyzed and testimony given in respect thereto in order to determine whether it is or is not an advancement. All advancements are gifts, but all gifts are not advancements. A gift may be an advancement or it may be an absolute gift, simply a gift and nothing more. [Miller v. Richardson (Mo.), 85 S. W. (2d) 41.]

In the instant case what would be more appealing to a father than the desire to rescue his son and his grandchildren from the sad plight in which he found them in 1924, the year in which the will was executed and the house and lot furnished. He knew his son's shortcomings. The mother knew them, and said on the witness stand that "he was always out of a job." The natural and laudable in-

stincts of a father and grandfather asserted itself and he put them into effect by providing a home for them; "a roof over their heads" as he expressed it, and we venture to say that he was more concerned about the observance of the seventh clause of his will by the executor-trustee than in the maintenance of the fetish of equality which is now urged as a reason for the attempted nullification of this part of the will.

Those who maintain that the testator preferred to preserve equality rather than "to keep a roof over the heads" of his son and family, have a very sordid and perverted conception of human psychology and human behavior. Of course, if his estate had remained of the same value, or become of greater value, than it was in 1924 when he made the will, there would have been no question about there being equality among the legatees. The great stock market crash in the fall of 1929 caused property values to shrink materially, and the testator lived nearly a year thereafter and did not change his will. This is significant and evinced a sustained desire to take care of his descendants. The executor-trustee in striking down the seventh clause evinced a sordid and selfish desire *not* to carry out the will of the testator. The plight of the testator's loved descendants could be aptly described in Shylock's pitiful and pathetic wail when he learned that all his wealth was confiscated, but that he had a pardon for his life, which runs as follows:

"Nay, take my life and all, pardon not that.
You take my house when you do take the prop.
That doth sustain my house; you do take my life,
When you do take the means whereby I live."

Merchant of Venice, Act IV, Scene 1.

However, there is another motive, not in the least altruistic, which may have inspired the effort of the executor-trustee to ignore and destroy the seventh clause of the will, the accomplishment of which would increase the amount of the commission of the executor. Section 221, Revised Statutes Missouri, 1929, fixes the full compensation of the executor at a commission of "five per cent on personal property and money arising from the sale of real estate." If the son's notes amounting to $11,000 be held to be an advancement, then they never became a part of the father's estate, and, consequently, no commission was allowable on them.

It appears that the reasonable value of the son's house and lot was estimated to be only $4000 in 1932. Under the provisions of the will the trust company could hold the entire *corpus* of the estate until the death or remarriage of the widow. It will thus be observed that the length of time the son and the members of his family might be compelled to remain pauperized and homeless was "in the lap of the Gods.". We cannot believe that such a situation was in accord with the testator's intention and wishes.

The doctrine of estoppel is not applicable under the facts of the instant case and will furnish no shield for the protection of the executor-trustee for its improper conduct in failing to give effect to the seventh clause of the testator's will.

The son of the testator had no legal learning and was ignorant and unversed in court procedure and, prior to the time his home was advertised for sale under the deed of trust, seemed to have confidence in the trust company and regarded its "bigness" with something akin to awe. Nothing he did or said or left undone or unsaid could have the slightest effect on the question of whether he was legally liable on the notes in controversy.

In In re Flynn's Estate (Mo. App.), 67 S. W. (2d) 771, it was sought to create an estoppel against the surviving husband, preventing him from renouncing his wife's will by his reception of moneys from the executor, which he could only properly do under the terms of the will, and this court held that as he was a layman unversed in legal lore and his conduct was not such as to prejudice the rights of others interested in the estate, that he should not be so estopped.

The series of letters and copies of court papers which the trust company showered on the plaintiff (the son) were not any more understandable by him than Einstein's theory of relativity would be to the average individual. The action of the probate court, whatever it was, could not affect the son's rights. These notes could not be sued on in the probate court; it had no jurisdiction to determine whether the son and the son's wife were legally liable on the notes. Suppose the executors had inventoried a lot of notes which were barred by the Statute of Limitations on their face, they, of course, could not be sued on in the probate court, and whatever the probate court might do, or whatever judgment it might render in respect to the administration of the estate could not create a liability on the makers of the note or prevent them from interposing any defenses they might have when sued on in courts which have jurisdiction to hear such suits. Besides, the probate court is a court of limited jurisdiction. The law making branch of the the state government has never conferred any equity jurisdiction on probate courts. In fact, it does not require a probate judge to be "learned in the law." And, it is a well known fact, that in many counties in Missouri the Probate Judges are laymen unversed in legal lore. The construction of a will is for a court of equity.

In Studer v. Harlan, 109 S. W. (2d) 687, l. c. 691, this court held that the amount of a debt of a child to the ancestor's or testator's estate should be determined by calculating interest to the date of the testator's death. In the instant case these notes all ceased to be debts and were converted into advancements upon the death of the testator and the probation of his will. Although this estate has been

administered in the probate court, but at no time was there an issue made up as to whether the son's debt held by the father should be considered as an advancement. There was no proceeding instituted in the probate court attempting to have it to construe this clause of the will, and at no time was the son a party to any proceeding wherein the issue of whether his notes were, or were not a part of the estate of the testator. As stated in the case of Ladd v. Stephens, 147 Mo. 319, 48 S. W. 915, l. c. 918:

"An heir has a right to have a judicial determination of the question as to whether money or property received from a parent shall be regarded as a gift or as an advancement. It would be manifestly unjust to debar an heir from participation in a parent's estate because he failed to bring into hotchpot some insignificant gift, as he regarded it, which might afterwards be treated as an advancement. These heirs concealed nothing from the remaining heirs of the estate concerning this matter. They were guilty of no wrong to their coheirs in asking a judicial interpretation of whether it was a gift or advancement."

In support of our views as hereinbefore expressed, we cite the following cases: Nelson v. Nelson, 90 Mo. 460, l. c. 464, 2 S. W. 413; Cochran v. Garth, 163 Tenn. 59, l. c. 65; Darne v. Lloyd, 82 Va. 858, l. c. 861-862; Nelson v. Wyan, 21 Mo. 347, l. c. 352; Hines v. Hines, 243 Mo. 480, l. c. 500, 147 S. W. 774; Wentworth v. Wentworth, 75 New Hamp. 547, l. c. 549; Garth v. Garth, 139 Mo. 456, l. c. 465-66, 41 S. W. 238; Chiles v. Gallagher, 67 Miss. 413, l. c. 421; Montgomery Tr. v. Brown, 134 Ky. 592; Ann. Note, 46 A. L. R. 1426-1428; McPherson v. Black (Ky.), 284 S. W. 413, l. c. 414; Edwards v. Livesay, 203 Ky. 53, l. c. 54; Re Sipchens Estate, 180 Wis. 504, l. c. 510; McCoy v. McCoy, 105 Va. 829, l. c. 841; Green v. Yarnall, 6 Mo. 326, l. c. 329; Tennent v. Union Central Life Ins. Co., 133 Mo. App. 345, l. c. 365, 112 S. W. 754; 10 R. C. L., pp. 693 and 695.

We do not feel that the St. Louis Union Trust Company should be ousted from the execution of the trust, as prayed for in the petition. We feel that to do so would further thwart the wishes and views of the testator as expressed in his will. Consequently, we refrain from making an order ousting the trust company from its trusteeship.

It follows, however, that the judgment of the circuit court, should be, and is hereby, reversed, and the cause is remanded with directions to the lower court to enter a judgment against Otto F. Karbe, trustee in the deed of trust, and the St. Louis Union Trust Company, trustee under the will of Gustav Hanssen, Sr., enjoining them, or either of them from proceeding to sell the plaintiffs' real estate under the notes and deed of trust in controversy, and also ordering and directing the St. Louis Union Trust Company to deliver the physical

possession of the said notes and deed of trust to the plaintiffs, and also to adjudge all costs against the St. Louis Union Trust Company. *Becker* and *McCullen, JJ.*, concur in result but not in all of the language used.